**Robert W. SIMMONS, Plaintiff,**

v.

**W. M. JONES, Ernest Walker, Remer Dasher, William Smith, Wayne Golden and Oscar Davis, Jury Commissioners for Long County, Georgia, Defendants.**

**Civ. A. No. 1018.**

United States District Court,
S. D. Georgia,
Brunswick Division.

Oct. 1, 1970.

Frank W. Seiler, Walter C. Hartridge, II, Charles H. Wessels, Savannah, Ga., for plaintiff.

Richard Phillips, Ralph L. Dawson, Ludowici, Ga., for defendants.

## ORDER

LAWRENCE, Chief Judge.

In this case plaintiff attacks the administration of the jury laws in Long County, Georgia. Jurisdiction is based on 28 U.S.C. § 1343(3) [1] and on the Civil Rights Act, including 42 U.S.C. § 1983.[2] The defendants in the present case are the jury commissioners of Long County.

Plaintiff who is the defendant in a damage suit pending in the Superior Court seeks an injunction against prosecution of all actions, civil and criminal, until the unconstitutional method of selecting traverse jurors is corrected. The complaint also seeks relief in the way of an order requiring the commissioners to carry out the requirements of the law as

1. The district courts have original jurisdiction of any civil action authorized by law "To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

2. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunties secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

to juries so as to insure plaintiff and parties litigant protection of their constitutional rights. Further relief is sought in the form of a declaration that the method of selecting traverse jurors presently used by the commissioners contravenes the Fourteenth Amendment.

When the complaint was presented I declined to restrain the Judge of the Superior Court from proceeding with jury trials at the September Term. I suggested, however, that, if he saw fit, they might be continued pending a hearing and determination of the issues in this Court. Judge Caswell who was very cooperative thereupon adjourned the September Term to a later date.

On August 20, 1970, an evidentiary hearing was held in this Court. Before dealing with the evidence it may be helpful to review the background of the case.

Jury commissioners in Georgia are appointed by the judges of the superior courts. Code § 59–101. For reasons not immediately apparent, that Section was amended in 1962 by the passage of a general bill with local application. The amendment affected only counties with a population of not less than 3600 and not more than 4500. It applied only to Long County.

Under the provisions of the Act of 1962 the terms of jury commissioners in counties affected thereby were terminated immediately and the superior court judge was authorized to appoint six new commissioners. The appointments were to be made by him from a list of discreet persons recommended by the county commissioners—six persons for two jury commissioners appointed to two-year terms; six for the two four-year term appointees and six for the two

commissioners having six-year terms. See Georgia Laws, 1962, pp. 6–8. Pursuant to this special law, six jury commissioners were appointed by the judge on the basis of recommendations submitted to him by the county commissioners.

At the September Term, 1969, the case of Simmons v. Gordon was scheduled for trial in Long Superior Court. Before trial, defendant's counsel filed a challenge to the array. It attacked the constitutionality of the 1962 amendment on various grounds, including denial of due process under the Fourteenth Amendment and the contention that the Act constituted special legislation interdicted by the Georgia Constitution.

Defendant's challenge to the array was denied after a hearing. The trial of the case was continued and a certificate for immediate review was signed by Judge Caswell. The appeal was argued in the Supreme Court of Georgia on January 13, 1970.

Less than a week later a bill was introduced in the General Assembly to repeal the 1962 Act. It was enacted into law on February 6, 1970. Under the repealing Act the superior court judge in any county affected by the 1962 amendment was authorized to appoint jury revisors and to order a revision of the jury list. See Georgia Laws, 1970, pp. 10–12. Subsequently, the Supreme Court dismissed the appeal on the ground that the repeal of the law rendered the only issue in the case moot. Simmons v. Gordon, 226 Ga. 162, 173 S.E.2d 223.[3]

Following the repeal of the 1962 Act, Judge Caswell appointed new commissioners. They met on February 14, 1970. After being sworn in they were instructed in their duties by the Ordi-

3. In 1962 certain citizens brought a quo warranto action in the Superior Court challenging the legislation in question. See Parker et al. v. Davis et al., 218 Ga. 810, 130 S.E.2d 723. The Supreme Court affirmed the dismissal of the case on general demurrer. It held that since the general law authorized the superior court judge to remove jury commissioners as a matter of discretion without a hearing "it is not necessary to determine the constitutionality of an act which purports, on the basis of a classification limited to one county, to grant authority pertaining to the appointment and removal of jury commissioners varying the provisions of the general law."

nary of the County. The commissioners remained in session all day on Saturday and met again on Monday. There is, to say the least, a good deal of conflict as to what they did or did not do.

What they were supposed to do was to implement the legislation enacted by the General Assembly in 1967. Prior to that time the law provided that commissioners should select as traverse jurors "upright and intelligent citizens" from the books of the tax receiver. In what appears to be a reaction to the Supreme Court's ruling in Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599, the General Assembly amended Ga.Code § 59–106 in 1967. The new law provides that in compiling, maintaining and revising a jury list of "intelligent and upright citizens" the commissioners shall select "a fairly representative cross-section" from the official registered voters' list used at the last general election. In accomplishing that object jury commissioners are required, if at any time the list compiled appears not to be a representative cross-section, to supplement same by going out into the county and personally acquainting themselves with other citizens, including those of "any significantly identifiable group" which may not be fairly represented.

The Chairman of the jury commission testified that when the commissioners met on February 14th of this year they were handed a voters' registration list; that they checked it and picked therefrom names of persons they thought are qualified to serve as jurors. The Clerk wrote down the names selected on a pad. All of the commissioners had a "free run of the list" but each commissioner generally concerned himself with the Militia District in which he resided. The Chairman himself selected 75 persons.

Another jury commissioner testified that there were no names in the jury box when they started and that only the voters' registration list was used by them. He says that the persons they selected for jury service were those "we thought were good citizens." Both of the commissioners who took the stand denied that the commissioners had before them the old jury list. Plaintiff claims that the evidence irrefutably shows that the old jury list was the basis of the recompilation.

There are 420 persons on the present list. Of these names 72% were on the old list. I cannot say, in the face of the denials by those commissioners who testified, that the previous jury list was resorted to in February in compiling the new one. However, there was testimony from Eugene S. Caison to the effect that no less than 160 names are on the new jury list which appeared in another form on the list of registered voters. For example, the new jury list contains the name I. M. Hendrix and so did the old list. On the voters' registration list he appears as Bill Hendrix. The Chairman testified that he himself made the change in question. The name of Ronald D. Baggs on the jury list is shown as R. D. Baggs on the voters' list.[4] As already stated, the undisputed testimony was that there are 160 cases in which the name appears on the old jury list rather than as shown on the voters' registration list. In 19 instances there are persons on the revised jury list who are not registered voters in the County.

Mr. Caison testified that 49% of the persons on the revised jury list (206 jurors) are immediately related to some other juror or jurors on the list. When the list was revised in 1970 the names of 105 jurors were eliminated. The replacements in many cases were a son for a father, a brother for a brother, a sister for a sister, or a wife for a husband.

There are 2,707 registered voters in Long County. In the past eleven years a total of only 527 citizens have served on juries. During that span one juror served 10 times. A considerable number served 7, 8 or 9 times in that period.

4. In one instance a name appears on the jury list of a person not on the voters' list and who has lived in another county for 22 years.

The law exempts from jury duty persons who are 65 years of age or older unless they file a written request to serve. The existing jury list contains the names of at least 30 persons over the age limit. One juror is 88 years old and deaf. A juror who is 76 years of age, two jurors aged 75, two 71 and two aged "over sixty five" furnished affidavits to the effect that they had never requested their names to be included on the list. An affidavit by Eugene S. Caison filed after the hearing states that most of the jurors over sixty-five do not respond to summons. A number of the overage jurors who signed waivers of exemption are either former public employees or are now publicly employed. For the most part they respond when summoned for jury duty.

The jury commissioners seem to possess a predilection for office holders and law enforcement officers. The present jury list includes a State game warden, all policemen, a State revenue officer, a State patrolman, the sheriff and most of his deputies, a justice of the peace, the Ordinary, a city councilman, and other public officials. On September 18, 1969, thirty-seven jurors signed waivers of exemption from jury service because of official position or age.[5] In an affidavit filed after the hearing Mr. Caison claims that the signatures waiving exemption were obtained by solicitation rather than by voluntary action and was carried out by local law enforcement officers.

Plaintiff contends that the selection of jurors is and has been politically motivated. There was testimony that out of 31 members of the "Long County Men's Club," an organization formed for the "betterment" of the County, only three are on the jury list and the name of one of them was included before 1970. Evidence was presented that requests were signed that year by 63 voters, allegedly eligible for jury duty who had never served, asking that their names be placed on the list. The jury commissioners paid no heed to the requests.

To all of this defendants reply that both the chairman of the local Democratic Party and the chairman of the local Republican Party are on the jury list and that of the candidates who have run for political office in Long County in the past two years 16 out of 21 of the winners are listed and 10 out of 16 of the losers.

It is plaintiff's contention that the effect of the method of selection of traverse jurors in Long County is to deny to litigants the opportunity of a fair trial. Five Savannah lawyers who occasionally practice in Long County Superior Court where they represent defendants testified at the hearing. Attached to the complaint are affidavits from five other attorneys. Each of them tell a tale of woe. Apparently two Long County lawyers handle nearly all of the damage suit practice in that County. Their clients frequently seek damages of $10,000 and verdicts are promptly awarded in that amount. An attorney who represented the defendant in one of the cases testified that a verdict was awarded in that amount in a personal injury suit where the physician "didn't even prescribe aspirin." In an action which could not be removed to federal court $60,000 damages was prayed. The jury gave precisely that amount. For their part, defendants introduced court records in four cases in which lesser sums than the amount sued for were awarded by juries. In 1967 there was a verdict for $5,000 in a case where $10,000 was sought. In May, 1969, the jury awarded $5,000 in a suit seeking $10,000. At the same term $8,000 was awarded where the damages were claimed to be $10,000. In the fourth case a jury brought in a verdict for $8,500 in an action in which the amount sought was $9,750.

In implementing the Fourteenth Amendment, Congress enacted in 1875 a statute which provides that no citizen

5. The law exempts from jury duty police and other law enforcement officers in the absence of written consent to serve.

possessing all other qualifications prescribed by law should be disqualified as a juror in any court, state or federal, because of race. 18 U.S.C. § 243. Beginning with Neal v. Delaware, 103 U.S. 370, 26 L.Ed. 567 (1880) a long line of cases has held that the intentional and systematic exclusion of Negroes from jury service solely on account of race is a denial of equal protection. See Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664; Carter v. Texas, 177 U.S. 442, 20 S.Ct. 687, 44 L.Ed. 839; Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84; Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559; Brunson v. North Carolina, 333 U.S. 851; Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244; Reece v. Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77; Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759; Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599. Some of the leading cases in the Fifth Circuit are footnoted below.[6]

In the present case no racial factor is involved. A white defendant in a civil damage suit complains of the system of jury selection. In Fay v. New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 the New York plan of special jury panels—"blue ribbon" juries—was upheld against a Fourteenth Amendment challenge that it tended to exclude certain working classes. The majority of the Court, distinguishing decisions involving systematic exclusion of Negroes, said that "Congress has put these cases in a class by themselves." *Ibid.*, p. 282, 67 S.Ct. p. 1624. Mr. Justice Jackson who wrote the prevailing opinion stated, "It is significant that this Court never has interfered with the composition of state juries except in cases where this guidance of Congress was applicable." However, he went on to say, "We do not

mean that no case of discrimination in jury drawing except those involving race or color can carry such unjust consequences as to amount to a trial of equal protection or due process of law." The majority held that "one who would have the judiciary intervene on grounds not covered by statute must comply with the exacting requirements of proving clearly that in his own case the procedure has gone so far afield that its results are a denial of equal protection or due process." The minority opinion expressed the view that the failure of Congress to legislate "as to economic or other discrimination in jury selection does not permit us to stand idly by" where state procedure as to juries are in conflict with the Fourteenth Amendment. *Ibid.*, p. 297, 67 S.Ct., p. 1632.

The constitutional guarantee of equal protection of the laws is not directed solely against discrimination between whites and blacks. It applies to any identifiable group in the community. Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866. The Fourteenth Amendment protects all and not some citizens as to discrimination in jury selection. "The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community." Thiel v. Southern Pacific Co., 328 U.S. 217, 221, 66 S.Ct. 984, 986, 90 L.Ed. 1181. In support of that statement the Court cited Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 which involved the matter of racial composition of juries in state cases. In Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, a case involving the composition of federal juries, the Court said that "the proper functioning of the jury system, and, indeed, our democracy itself, requires that the jury be a 'body truly representative of the

---

6. United States ex rel. Goldsby v. Harpole, 249 F.2d 417; Cobb v. Balkcom, 339 F.2d 95; Scott v. Walker, 358 F. 2d 561; Billingsley v. Clayton, 359 F.2d 13; Brooks v. Beto, 366 F.2d 1; Mobley v. United States, 379 F.2d 768; Pullum v. Greene, 396 F.2d 251; Jackson v. Morrow, 404 F.2d 903; Salisbury v. Grimes, 406 F.2d 50 and Simmons v. United States, 406 F.2d 456.

community,'[7] and not the organ of any special group or class * * * Tendencies, no matter how slight toward the selection of jurors by any method other than a process which will insure a trial by a representative group are undermining processes weakening the institution of jury trial, and should be sturdily resisted." In United States v. DiTommaso, 4 Cir., 405 F.2d 385, 389 it was said, "The constitutional principle that juries must be selected from a fair cross-section of the community is now well-established."

The cases that deal with systematic exclusion of blacks from juries frequently use language of universal application. In Bailey v. Henslee, 8 Cir., 287 F.2d 936, 941, Circuit Judge Blackmun (now Mr. Justice Blackmun) said, "When a right to a jury trial exists * * * a jury's proper composition is fundamental. * * *" The Court of Appeals for the Fifth Circuit says in Billingsley v. Clayton, 359 F.2d 13, 15, "A just and fair trial by an unbiased, unprejudiced and impartial tribunal is one of the great American constitutional principles. There can be no 'due process' or 'equal protection' unless that principle remains inviolate." In another Fifth Circuit case it is stated that "The very integrity of the fact-finding process depends on impartial venires representative of the community as a whole." Labat v. Bennett, 365 F.2d 698, 723.

 My reading of these cases convinces me that a litigant in a civil case is entitled to a trial before a jury drawn from a list constituting a fairly representative cross-section of the community. Undoubtedly, jury commissioners possess wide discretion in the selection of intelligent and upright persons for service. Carter v. State, 143 Ga. 632, 639, 85 S.E. 884. However, it is not enough to compose a list of jurors who are intelligent and upright. It must represent a "fairly representative cross-section" of such persons. Opinions will necessarily differ as to when a list is so

comprised. At the hearing the Judge and the Solicitor General of the Atlantic Circuit testified that the Long County list comprises a representative cross-section of the community. This is, of course, very persuasive. It must be remembered, too, that a jury roll need not be "a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group." Swain v. Alabama, *supra*, 380 U.S., p. 208, 85 S.Ct. p. 829. "While the cross-sectional concept is firmly imbedded in the law, the constitution does not require that the jury or jury venire be a statistical mirror of the community." United States v. DiTommaso, *supra*.

All this I have considered. I have also considered the fact that no institution in America is more important than that of the jury. Here a vast body of our citizenry participates directly, and here only, in the governmental process. It is imperative that the jury system be undefiled at its source. Some citizens and a number of lawyers who try cases in Long County seem to think that the method of jury selection leaves something to be desired.

██ ██ "The Constitution casts upon jury commissioners, as judicial administrators, affirmative duties which must be carried out in order to have a constitutionally secure system." Bokulich v. Jury Commission of Greene County, Alabama, D.C., 298 F.Supp. 181. A list that is a "fairly representative cross-section" of the community is both a constitutional *"standard"* as well as a *"duty"* in jury selection procedures in Georgia. Pullum v. Greene, 396 F.2d 251, 254. The defendants contend that this result was achieved and that they performed their work diligently and faithfully. I certainly think they were acting within their powers in not eliminating all jurors whose names were on the previous list. The 72% retained is not necessarily high. Further, the law of Georgia does not say that annually or biennially, as the case may be, an entirely *new* list

---

7. The quotation is from Smith v. Texas, 311 U.S. 130, 61 S.Ct. 164.

of jurors shall be selected. Under the jury system in this State the starting point of revision is the existing jury list. Everyone on it is usually considered to be qualified. People remain on the list until they die, move away or elect not to serve after reaching the age of sixty-five. However, the fact that jury commissioners have acted in good faith is not a defense to the failure to discharge the "affirmative constitutional duties cast upon them." Salary v. Wilson, 5 Cir., 415 F.2d 467, 472; Vanleeward v. Rutledge, 5 Cir., 369 F.2d 584; Davis v. Davis, 5 Cir., 361 F.2d 770. Results speak for themselves and commissioners must be held to have intended the natural result of their conduct. Rabinowitz v. United States, 5 Cir., 366 F.2d 34, 56.

■■■ I hold that the jury list in Long County as presently composed falls short of constitutional requirements. The practice of putting the names of several members of the same family in the box (though ordinarily permissible) tends in the case of a small county to unduly weight the rights and power of that group of jurors. The over representation in the class of office holders, public employees and persons above sixty-five years of age dilutes the rights of persons eligible for jury duty but who are not on the list.[8]

■■■ Discrimination in jury selection may result from inclusion of certain groups as well as exclusion of others. "An accused is entitled to have charges against him considered by a jury in the selection of which there has been neither inclusion nor exclusion because of race." Cassell v. State of Texas, 339 U.S. 282, 287, 70 S.Ct. 629, 632, 94 L.Ed. 839. I do not see why a litigant in a civil case possesses rights in a lower degree. A numerically small list with over representation of certain groups or elements serves to exclude citizens eligible for jury service. There are other irregularities in the list which while not crucial help tip the scales in finding that there is a denial of due process and equal protection.

■■■ A good deal was said at the hearing about the smallness of the list of jurors in Long County and the fact that as administered the system ignores as jurors 84½% of the registered voters. There are 420 names on the jury list which is 15½% of the list of voters. The defendants introduced evidence that out of nine counties in the area only two have a higher percentage than Long County of jurors as related to the number of registered voters. The number of jurors in a box is, of course, a matter of discretion for the jury commissioners. In the present case a broadening of the base should be certainly considered by the Commission. A larger jury list would provide a better cross-section.

I am confident that there is a large number of intelligent and upright persons eligible for jury service who have never been called. In the past twenty-one months I have had as much experience as most federal judges with the "random selection" jury system that became effective in December, 1968. A number of times, out of curiosity, I have asked a panel for a show of hands as to those who have ever served before on a state or federal jury. In no case have more than five out of fifty jurors served on a jury previously. I have been much gratified by noting the large number of truly conscientious jurors, men and women endowed with a sense of justice,

8. In Avery v. State, 209 Ga. 116, 123, 70 S.E.2d 716, 721 the Supreme Court of Georgia expressed the opinion that "jury service is not a right or privilege, but is a burden which the State summons certain of its citizens to bear. * * * " It has been held that no State constitutional right exists in respect to every person being included on the jury list who possesses the qualification for jury service. Davis v. Arthur, 139 Ga. 74, 76 S.E. 676. What I hold is that a litigant in a civil case has a Fourteenth Amendment right to a jury list which fairly represents a cross-section of the community and that a jury roll is not such where excessive weight is given to some groups or classes.

drawn for jury duty in this Court under the random selection system.

Counsel for defendants argue that if federal courts are permitted to fix the rules and conditions under which state courts function in the trial of damage suits involving only monetary damages the dignity and independence of the latter will be destroyed. It would set a precedent, they say, disturbing to all rights of citizens of Georgia in civil and criminal cases. They contend that there are various ways in which the validity of the jury system can be challenged in the state courts and that it should be first attacked there.

As I earlier pointed out, efforts to obtain relief from the method of appointing jury commissioners in Long County have been made in the past in the state court. The first such challenge of the palpably unconstitutional Act of 1962 failed on both the trial and appellate court level. Similar litigation by the present plaintiff in 1969 indirectly brought about repeal of the special law. New jury commissioners were appointed by the Judge. Their revision of the list does not meet federal constitutional standards. Under the circumstances, I see no reasonable prospect of relief from the state courts, certainly no prompt relief.

 Moreover, the plaintiff is not required to exhaust his state remedies before applying to a federal court for relief against infringement of his Fourteenth Amendment rights. This action is brought under 42 U.S.C. § 1983 for alleged deprivation of federal constitutional rights by officials acting under color of state law. In such cases there is not any exhaustion requirement. "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492. See also Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647; McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622; Moreno v. Henckel, 431 F.2d 1299 (5th Cir., Sept. 23, 1970).

Having concluded that the methods used by the Commissioners and the results thereof are a violation of plaintiff's due process and equal protection rights, it becomes our task to try to bring the present list within constitutional bounds. One thing is clear. The Jury Commissioners must start over. Their job which is of high importance should be approached with an eye single to compiling a list of intelligent and upright citizens which reflects a true cross-section of the community. In accomplishing that object the voters' list for the 1970 General Election will be used.

I list below a few guides for the Commissioners in carrying out their duties. They are guides and no more.

(a) The Commissioners should consider the elimination of all persons on the present list who were called for jury duty between 1960 and 1964. The names of such jurors appear on plaintiff's Exhibit No. 14. This does not mean that these citizens cannot be reconsidered for service in any subsequent revision of the list. For the time being, however, I think that jurors who have served over ten years are well entitled to a respite from jury duty.

(b) Multiple family representation should be eliminated whenever jurors are related by blood or marriage and reside under the same roof or on the same property or farm. Unless valid reasons exist, there should be not more than one member of such families on the jury list.

(c) Names of law enforcement officers should be stricken. They have enough work already. Where officeholders and public employees are overweighted as a class the Commissioners should take stock.

(d) Jurors over sixty-five years of age should be deleted in most cases. In

fact, low priority should be given all classes of persons exempted from duty by Ga.Code, Supp. § 59–112. Waivers of exemption should be carefully scrutinized and not recognized where solicited.

(e) The percentage of women on the present jury list is less than 25% of the total number of jurors. Whether that percentage produces a fair cross-section of females eligible for service as jurors is a matter for determination by the Commissioners. There is no constitutional mandate as to mathematical proportion of identifiable groups or classes of prospective jurors.

(f) Names of non-residents, aliens, infirm or deceased persons and citizens who are not registered voters should be removed from the box.

(g) Race and color must, of course, not be a factor in the revision of the list. Nor shall political affiliation be.

Before signing this order I will add a final word. This case is not about unjust verdicts in damage suits in Long County. This Court is entirely indifferent to which side wins or how much a plaintiff is awarded. What is unfair in a verdict is a matter of opinion. As I remarked at the hearing, defendants in damage suits in the County may gain nothing from a recomposition of the jury. But that is not the point. What I am concerned with and deeply is that parties in civil and criminal cases be assured of the opportunity and the right to strike from a panel drawn from a jury box which satisfies the standards of fair play required by the Fourteenth Amendment.

The commissioners must work diligently to that end. Time is important. The revised jury list is to be filed in the office of the Clerk of the Superior Court of Long County by October 20, 1970. A report will be made to this Court at the same time.

The Marshal is directed to serve a copy of this Order upon each of the defendant Commissioners.