**Robert W. SIMMONS, Plaintiff-Appellee,**

v.

**W. M. JONES and Ernest Walker et al., Jury Commissioners for Long County, Georgia, Defendants-Appellants.**

**No. 71–1092.**

United States Court of Appeals, Fifth Circuit.

May 14, 1973.

---

R. L. Dawson, Richard D. Phillips, Ludowici, Ga., for defendants-appellants.

Frank W. Seiler, Walter C. Hartridge, II, Charles H. Wessels, Savannah, Ga., for plaintiff-appellee.

Before GODBOLD, SIMPSON and CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

Robert W. Simmons, the defendant in a pending state court damage action, brought this suit in the federal district court below to compel the jury commissioners of Long County, Georgia, to perform their official duties in accordance with Section 59–106, Georgia Code Annotated.[1] The court below, after a

---

1. Section 59–106, Georgia Code Annotated, reads:

59–106. (816, 819 P.C.) Revision of jury lists. Selection of grand and traverse jurors.—At least biennially, or, if the judge of the superior court shall direct, at least annually, on the first Monday in August, or within 60 days thereafter, the board of jury commissioners shall compile and maintain and revise a jury list of intelligent and upright citizens of the county to serve as jurors. In composing such list the commissioners shall select a fairly representative cross-section of the intelligent and upright citizens of the county from the official registered voters' list which was used in the last preceding general election. If at any time it appears to the jury commissioners that the jury list, so composed, is not a fairly representative cross-section of the intelligent and upright citizens of the county, they shall supplement such list by going out into the county and personally acquainting themselves with other citizens of the county, including intelligent and upright citizens of any significantly identifiable group in the county which may not be fairly representative thereon.

After selecting the citizens to serve as jurors, the jury commissioners shall select from the jury list a sufficient number of

non-jury trial, ordered the defendants to recompile the Long County list of traverse jurors and to accomplish such a recompilation in partial disregard of the provisions of Section 59–112 of the Georgia Code.[2] We have concluded that the district court improperly intervened in the administration of Georgia's juror selection system in this case. For the reasons given below, the judgment of the lower court is reversed and remanded with direction to dismiss the complaint.

## THE FACTS

The plaintiff-appellee is a white male resident of Long County, Georgia. On February 17, 1967, Simmons was involved in an automobile collision in Long County with J. Clyde Gordon, likewise a white male resident of Long County. Gordon brought suit against Simmons for damages in the Superior Court for Long County. When the case was called for trial, Simmons attacked the constitutionality of a state law of local application governing the selection of jury commissioners. His challenge to the array was denied by the trial judge, who then continued the case and signed a certificate for immediate review. While the matter was pending before the Supreme Court of Georgia, that state's legislature repealed the local law (Georgia Laws, 1970, pp. 10–12), thereby making the general juror selection statutes applicable to Long County. As a consequence of the legislature's action, the Supreme

the most experienced, intelligent and upright citizens, not exceeding two-fifths of the whole number, to serve as grand jurors. The entire number first selected, including those afterwards selected as grand jurors, shall constitute the body of traverse jurors for the county, [except] as otherwise provided herein, and no new names shall be added until those names originally selected have been completely exhausted, except when a name which has already been drawn for the same term as a grand juror shall also be drawn as a traverse juror, such name shall be returned to the box and another drawn in its stead.

2. Section 59–112, Georgia Code Annotated, reads:

59–112. (871 P.C.) Persons exempt from jury duty.—(a) The following persons are exempt from all jury duty, civil or criminal; the name of any such person shall not be included or continued in the jury box unless such person shall make a request therefor in writing to the board of jury commissioners or its clerk:

1. Police and other law enforcement officers employed or appointed on a full-time basis, but not part-time or honorary peace officers.

2. Officers and personnel of any court employed or appointed on a full-time basis, including attorneys at law who are active members of the State Bar of Georgia and regularly engaged in the practice of law in this State.

3. Officers, firemen and other personnel of any fire department employed or appointed on a full-time basis, except that exemption hereunder shall also apply to those members of a volunteer fire depart-

ment, certified to the board of jury commissioners by the administrative head thereof as indispensable to the effective operation of such department.

4. Physicians, surgeons, medical interns, and medical technicians actively engaged as such, except that exemption hereunder shall also apply to other personnel of a hospital certified to the board of jury commissioners by the administrative head thereof as indispensable to the effective operation of such hospital.

5. Dentists and pharmacists, duly licensed, who are actively engaged in the practice of their profession.

6. Persons who are 65 years of age or older.

(b) Any other person summoned to jury duty may be excused therefrom by the judge of the court to which he has been summoned upon a showing that he will be engaged during the term of his required service in work necessary to the public health, safety or good order, or that she is a housewife with children 14 years of age or younger.

(c) The exemption hereunder shall not apply to attorneys at law or physicians summoned to serve on commissions or juries pursuant to any of the provisions of Title 88 of the Code of Georgia known as "The Health Code," as now in effect or hereafter amended.

(d) Any woman, teacher or principal of this State who does not desire to serve upon juries shall notify the jury commissioners of the county in which she resides in writing to that effect, and thereupon the jury commissioners shall not place the name of such woman, teacher or principal in the jury box for said county.

Court of Georgia dismissed the appeal from the Long County Superior Court on the ground of mootness. Simmons v. Gordon, 1970, 226 Ga. 162, 173 S.E.2d 223.

The state damage action was rescheduled for trial at the August, 1970, term of the Long County Superior Court. Before the case was reached, Simmons, on August 13, 1970, filed his complaint in the United States District Court for the Southern District of Georgia, naming the Long County jury commissioners as defendants and praying for relief from the manner in which Sections 59–106 and 59–112, Georgia Code Annotated, were allegedly being administered within that county.

### THE COMPLAINT

Invoking the jurisdiction of the district court under 28 U.S.C. Secs. 1343(3), 1343(4), 2201, and 2202; 42 U.S.C. Secs. 1983 and 1988; and the Fourteenth Amendment to the United States Constitution (equal protection and due process clauses), the complaint charged:

8. Despite the clear mandate of Ga.Code Ann. § 59–106 to select as a jury a representative cross-section of the intelligent and upright citizens of the county from the registered voters' list which was used in the last preceding general election and to supplement such list as necessary by going out into the county and personally acquainting themselves with other citizens of the county, including intelligent and upright citizens of any significantly identifiable group in the county, the Jury Commissioners of Long County assembled a traverse jury box for the August Term of Long County Superior Court and any subsequent adjourned term thereof containing the names of only 420 persons. These said 420 persons comprise only 15½% of the registered voters in Long County, Georgia.

9. The Jury Commissioners of Long County have failed to inquire into the eligibility of 84½% of the registered voters of Long County to serve as jurors in order to comply with the statutes to insure that the jury list is fairly representative of a cross-section of the county's intelligent and upright citizens. Moreover, the Jury Commissioners have eliminated from consideration for jury service a substantial percentage of the population of the entire County of Long.

10. In composing the list of jurors, defendants did not, pursuant to Georgia Code § 59–106, employ the official registered voters' list used in the last preceding general election. This is demonstrated by the fact that persons whose names appear on the list of jurors do not appear on the applicable voters' lists. Moreover, the names of persons listed as jurors appear in a large number of instances on the jury list in a different form than the form in which said names appear on the applicable voters' list. Evidence in support of these allegations is supplied in the form of the affidavits of Eugene S. Caison and Joseph M. Murray which are attached hereto and made a part hereof as Exhibits 1 and 2, respectively.

11. Plaintiff avers on information and belief that it is not possible to have a civil action fairly tried in Long County because for at least the past eight years, no verdict in any case tried in Long County has ever been returned in an amount substantially less than the amount of damages sought in petitions and complaints filed by Ralph Dawson or his nephew, Richard Dawson Phillips, or either or both of them.

12. Plaintiff's counsel have prepared an affidavit which is attached hereto and made a part hereof as Exhibit 3 stating their experience in Long County, Georgia. Plaintiff's counsel can recall no instances in which a jury verdict was ever returned for substantially less than the full amount sought. Plaintiff's coun-

sel has obtained from a number of practitioners throughout South Georgia affidavits setting forth their experiences in Long County, Georgia, which experiences are identical to that of plaintiff's counsel. These affidavits are attached hereto and made a part hereof as Exhibits 4 through 8.

13. Plaintiff alleges as a result of defendants' conduct he has been placed in imminent danger of being deprived of his property without due process of law.

14. Unless this Court, exercising equitable powers, restrains the aforesaid illegal and unconstitutional application of Ga.Code Ann. § 59–106, defendant will be deprived of his property without due process of law at the August Term of the Superior Court of Long County, Georgia, which commences on Monday, August 17, 1970.

The complaint concluded with prayers for the following relief:

(a) An injunction barring the prosecution of all jury actions, civil and criminal, in Long County until elimination of the allegedly unconstitutional method of selecting traverse jurors;

(b) A declaration that the method utilized by the defendants in selecting traverse jurors is unconstitutional, null and void;

(c) An order requiring the defendants to carry out the provisions of Section 59–106, Georgia Code Annotated, in a manner which will guarantee the protection of all the constitutional rights of litigants in Long County, Georgia;

(d) An order directing the United States Marshal to impound the Long County voters' and jurors' lists for the purpose of copying at Savannah, Georgia; and

(e) An order directing the defendants to show cause why they should not be compelled to comply with the provisions of Section 59–106 and the United States Constitution.

On August 14, 1970, the district court ordered the United States Marshal to impound the voters' and jurors' lists of Long County for the purpose of copying at Savannah, Georgia, and ordered the defendants to show cause why the relief sought in the complaint should not be granted. The district court declined to enjoin the prosecution of all jury actions in Long County. It appears, however, that the Judge of the Atlantic Circuit, State of Georgia, (which includes Long County) has honored the district court's informal request that all jury proceedings pending in Long County be held in abeyance pending the adjudication of the constitutional issues in the federal court.

## THE ANSWER

The defendants appeared and answered the complaint through their counsel, Ralph L. Dawson and Richard Dawson Phillips, both of Ludowici, Georgia, the county seat of Long County. They asserted that the complaint failed to state a claim upon which relief against the defendants could be granted. In addition, the defendants denied plaintiff's allegations that the Long County jury commissioners had failed to comply with the provisions of Section 59–106, Georgia Code Annotated, in the selection of traverse jurors for the August, 1970, term of the Long County Superior Court.

## THE DECISION BELOW

Following a trial on the merits, the lower court found for the plaintiff. Simmons v. Jones, S.D.Ga.1970, 317 F. Supp. 397. The district court determined that the plaintiff had a federal constitutional right to a state court civil trial "before a jury drawn from a list constituting a fairly representative cross-section of the community." 317 F.Supp. at 403. It then found that the defendants in selecting the Long County traverse jurors had deprived plaintiff of that right:

"I hold that the jury list in Long County as presently composed falls short of constitutional requirements.

The practice of putting the names of several members of the same family in the box (though ordinarily permissible) tends in the case of a small county to unduly weight the rights and power of that group of jurors. The over representation in the class of office holders, public employees and persons above sixty-five years of age dilutes the rights of persons eligible for jury duty but who are not on the list." 317 F.Supp. at 404.

The district court discounted the possibility of the plaintiff obtaining meaningful relief from the courts of the State of Georgia:

"As I earlier pointed out, efforts to obtain relief from the method of appointing jury commissioners in Long County have been made in the past in the state court. The first such challenge of the palpably unconstitutional Act of 1962 failed on both the trial and appellate court level. Similar litigation by the present plaintiff in 1969 indirectly brought about repeal of the special law. New jury commissioners were appointed by the Judge. Their revision of the list does not meet federal constitutional standards. Under the circumstances, I see no reasonable prospect of relief from state courts, certainly no prompt relief." 317 F. Supp. at 405.

Citing Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, the court below observed that exhaustion of state remedies was not required in this 42 U.S.C. Sec. 1983 action as a prerequisite to suit in federal court to vindicate a federal right. 317 F.Supp. at 405. The final matter taken up by the district court was that of an appropriate remedy:

"Having concluded that the methods used by the Commissioners and the results thereof are a violation of plaintiff's due process and equal protection rights, it becomes our task to try to bring the present list within constitutional bounds. One thing is clear. The Jury Commissioners must start

over. Their job which is of high importance should be approached with an eye single to compiling a list of intelligent and upright citizens which reflects a true cross-section of the community. In accomplishing that object the voters' list for the 1970 General Election will be used." 317 F.Supp. at 405.

To insure that the recompilation of the Long County jurors' list would not be a meaningless exercise, the district court directed the defendants to abide by the following guidelines in performing their duties:

"(a) The Commissioners should consider the elimination of all persons in the present list who were called for jury duty between 1960 and 1964 . . . This does not mean that these citizens cannot be reconsidered for service in any subsequent revision of the list. For the time being, however, I think that jurors who have served over ten years are well entitled to a respite from jury duty.

(b) Multiple family representation should be eliminated whenever jurors are related by blood or marriage and reside under the same roof or on the same property or farm. Unless valid reasons exist, there should be not more than one member of such families on the jury list.

(c) Names of law enforcement officers should be stricken. They have enough work already. Where office holders and public employees are overweighted as a class the Commissioners should take stock.

(d) Jurors over sixty-five years of age should be deleted in most cases. In fact, low priority should be given all classes of persons exempted from duty by Ga.Code, Supp. § 59–112. Waivers of exemption should be carefully scrutinized and not recognized where solicited.

(e) The percentage of women on the present jury list is less than 25% of the total number of jurors. Whether that percentage produces a

fair cross-section of females eligible for service as jurors is a matter for determination by the Commissioners. There is no constitutional mandate as to mathematical proportion or identifiable groups or classes of prospective jurors.

(f) Names of non-residents, aliens, infirm or deceased persons and citizens who are not registered voters should be removed from the box.

(g) Race and color must, of course, not be a factor in the revision of the list. Nor shall political affiliation be." 317 F.Supp. at 405–406.

## THE BASIC ISSUE

Boiled down to its essentials, Simmons' complaint alleged that the defendants, in compiling the Long County traverse jurors' list for the August, 1970, term of the Superior Court, had failed to comply with the mandate of Georgia statutory law. The federal district court was asked to police the manner in which the defendants, officials of the State of Georgia, performed their duties

to insure compliance with *state* law. Because the lower court was requested to assume the function of the Georgia state courts, we base our decision to reverse on alternative grounds; (a) the federal abstention doctrine and (b) the failure of the complaint to state a claim upon which relief could be granted.[3]

## THE FEDERAL ABSTENTION DOCTRINE

As already noted the district court held that the plaintiff was not required to exhaust his state remedies before pursuing his remedies in federal court under 42 U.S.C. Sec. 1983. This holding is supported by clear precedent.[4] The United States Supreme Court, however, on several occasions has indicated that a federal court, in an appropriate case, should abstain from deciding certain questions in order to avoid unnecessary friction between a state and the federal government.[5] This appears to us to be precisely such a case.

In Alabama Public Service Commission v. Southern Railway Company,

3. Also questioned by appellant is the propriety of the remedy fashioned by the district court. The decree's directions to the defendants required that in recompiling the jury list, they disregard portions of Sec. 59–112, Georgia Code Annotated note 2, supra, even though those portions had not been subjected to constitutional challenge. The mandate to strike the names of law enforcement officers and persons over 65 from the jury list, and the directive to give lowest priority to persons exempted under Sec. 59–112 went beyond the issues and are challenged as unwarranted and in excess of the lower court's authority, relying upon Fay v. New York, 1947, 332 U.S. 261, 67 S.Ct. 1613, 91 L. Ed. 2043, which upheld the constitutionality of New York's "blue ribbon" jury system. Because of the disposition we make of the appeal we do not reach and refrain from commenting on these issues.

4. Monroe v. Pape, 1961, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492. See further McNeese v. Board of Education, 1963, 373 U.S. 668, 83 S.Ct. 1433, 10 L. Ed.2d 622; Damico v. California, 1967, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647; Moreno v. Henckel, 5 Cir. 1970, 431 F.2d 1299; Hall v. Garson, 5 Cir. 1970, 430 F.2d 430; Harkless v. Sweeny

Independent School District, 5 Cir. 1970, 427 F.2d 319.

5. Professor Charles Alan Wright notes in his treatise "Law of Federal Courts", Wright, 2d Edition, 1970; p. 196, that "In the last three decades there has been considerable recognition of circumstances under which a federal court may decline to proceed though it has jurisdiction under the Constitution and the Statutes." He points out that rather than referring to all as "the abstention doctrine", it is more precise to refer to "abstention doctrines", since "there are at least four distinguishable lines of cases, involving different factual situations, different procedural consequences, different support in the decisions of the Supreme Court, and different arguments for and against their validity." The four categories are recognized as (1) to avoid decision of a federal constitutional question where the case may be disposed of on questions of state law: (2) to avoid needless conflict with the administration by a state of its own affairs; (3) to leave to a state the resolution of an unsettled state law question; and (4) to ease the congestion of the federal court docket. The case we discuss in the text, infra, Alabama Public Service Commission v. Southern Railway Com-

1951, 341 U.S. 341, 71 S.Ct. 762, 95 L. Ed. 1002, a three-judge federal district court had granted the railroad's petition for injunctive relief against a state commission order prohibiting the discontinuance of railroad passenger service. Speaking through Mr. Chief Justice Vinson, the Court ruled that the railroad should have pursued its state judicial remedies, which were clearly delineated by an Alabama statute, rather than bringing suit in the federal court under its diversity and federal question jurisdictions:

"As adequate state court review of an administrative order based upon predominantly local factors is available to appellee, intervention of a federal court is not necessary for the protection of federal rights. Equitable relief may be granted only when the District Court, in its sound discretion exercised with a "scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts," is convinced that the asserted federal right cannot be preserved except by granting the "extraordinary relief of an injunction in the federal courts." Considering that "[f]ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies," the usual rule of comity must govern the exercise of equitable jurisdiction by the District Court in this case. Whatever rights appellee may have are to be pursued through the state courts." (footnotes and citations omitted) 341 U.S. at 349–350, 71 S.Ct. at 768, 95 L.Ed. at 1008–1009.

■ No reason suggests itself to us for departing here from the doctrine of *Alabama Public Service Commission.* Stripped of its flimsy federal constitutional trappings Simmons' complaint basically was an effort to enlist a federal court in a campaign to achieve a more faithful application in a single small Georgia county [6] of Georgia's statutory scheme for the selection of traverse jurors. We must assume that the Georgia court system is capable of enforcing Section 59–106 of the Georgia Code. As a matter of comity, the district court should have afforded the Georgia courts the opportunity to rectify alleged deviations from the requirements of Georgia law regarding the selection of traverse jurors in Long County. Sound principles of federalism dictate this result.[7]

## FAILURE OF THE COMPLAINT TO STATE A CLAIM

Our decision in McDowell v. State of Texas, 5 Cir., 1971, 465 F.2d 1342, adopted as the opinion of the court en banc, 1972, 465 F.2d 1349, which was not available to the district court when this case was decided below [8] leads us to hold alternatively that the complaint

---

pany, is perhaps the leading exponent of the second of the Wright subdivisions. See also Burford v. Sun Oil Co., 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424; Hawks v. Hamill, 1933, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610. Professor Wright states, op. cit. 200, that in this type abstention normally appropriate procedure is dismissal of the action rather than retention of jurisdiction pending a state determination, noting that redress of any federal right prejudiced by action of the state court to which deference is thus shown, is available by United States Supreme Court review of the state decision.

6. Accepting the allegation of paragraph eight of the complaint, (text p. 4 supra) that 420 names represented 15½% of the total number of registered voters that total would be about 2700 names. The 1970 U. S. Census listed the population of Long County, Georgia at 3746. World Almanac, 1972.

7. For recent applications of this type of federal abstention doctrine by this Court, see Romero v. Coldwell, 5 Cir. 1972, 455 F.2d 1163, a class action to determine whether one-man one-vote concept applied to elected Justice of the Peace in El Paso County, Texas; Harris v. Samuels, 5 Cir. 1971, 440 F.2d 748, class suit by college students seeking to register as voters in the state in which the college was located; Hill v. City of El Paso, Texas, 5 Cir. 1971, 437 F.2d 352, 356, involving an attack upon the constitutionality of a city ordinance regulating junk yards.

8. Our panel decision in *McDowell*, May 8, 1971, as well of course as our adoption en banc of that opinion, August 29, 1972, occurred long after the decision below, October 1, 1970. Application for en banc

should have been dismissed for failure to state a claim upon which relief could be granted.

*McDowell* was a suit based upon 42 U.S.C. Sec. 1983 by a discharged state employee against his former employer, the Texas Board of Mental Health and Mental Retardation, seeking damages for an allegedly wrongful termination of his employment. The essential nature of McDowell's complaint was that the state officials involved had fired him in disregard of applicable Texas law for political reasons. Judge Clark, writing for the panel in *McDowell,* discussed the federal aspect of that claim in the following manner:

"The termination of Dr. McDowell's status as a State employee rests solely on a claim that his employers violated State statutes and local policies in effecting his termination. The right to employment by a State, in itself, is not a right secured by the Constitution or by the Laws of the United States; thus, even an invalid or improper discharge from such an office, unaccompanied by some more precise claim of *federal right* than a general claim of lack of due process, is not the sort of deprivation of a right, privilege or immunity which is secured by the Constitution of the United States or an Act of Congress providing for equal rights of citizens within the meaning of 28 U. S.C.A. § 1343(3). *Cf.* Johnson v. Hood, 430 F.2d 610 (5th Cir., 1970). Cases of this genre constitute uniquely State causes of action. As such they are peculiarly within the realm of State courts. "A right to have state (or city) laws obeyed is a state, not a federal right." Love v. Navarro, 262 F.Supp. 520 (D.C.Cal.1967). "Mere violation of a State statute does not infringe the federal Constitution." Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *cf.* Gentry v. Howard, 288 F.Supp. 495 (E.D.Tenn.1968). Even though it is patent that the amorphous and prote-

an contours of substantive due process under the Fourteenth Amendment extend to all citizens in all sorts of conditions and circumstances, it is equally axiomatic that federal jurisdiction under § 1343 and 42 U.S.C.A. § 1983 cannot be extended to that purely local squabble by the mere invocation of the generalized protection which these words of the amendment confer.

"The Constitution's deeply embedded concepts of federalism demand that we refuse a procedure of statutory construction that would put such a literal gloss on the words of §§ 1343 and 1983 as would kill the spirit the founding fathers quickened when the people of the sovereign states ceded sufficient government power to form a sovereign union. National Woodwork Manufacturers Ass'n. v. N. L. R. B., 386 U.S. 612, 87 S.Ct. 1250, 18 L. Ed.2d 357 (1967). If we were to distort §§ 1343 and 1983 to vest federal courts with jurisdiction over the uniquely local substantive matters which this case presents, we would not only impair our ability to consider the vast array of cases that properly belong in federal forums but, as surely as sunrise, we create yet another and an unnecessary interference with orderly State processes." 465 F.2d at 1345, 1346.

■ *McDowell* was a state employment case while this appeal concerns the selection of jurors in a state court. But we believe that the rationale of *McDowell* is applicable here. The alleged failure of the defendants to comply with Section 59–106, Georgia Code Annotated, without a showing of systematic exclusion on the basis of race or some other ground forbidden by national policy, does not give rise to a federal cause of action under the federal civil rights statutes.

## CONCLUSION

In recent years federal courts have been thrust into the policing of numerous areas once considered outside their

in *McDowell* was pending when this case was argued before us and this decision was

withheld awaiting the en banc court's disposition.

province of governmental control. They labor under mounting caseloads increased by expanding concepts of federal constitutional imperatives.

*McDowell* teaches that the complaint here did not state grounds for federal relief. Alternatively, the district court should have heeded established comity principles and abstained from voluntarily assuming the function of state courts in the supervision of state juror selection process. Without a conclusive showing—which was absent—that the courts of Georgia are either unwilling or unable to enforce Georgia laws governing the jury selection process of Long County, Georgia, it was error to entertain this action.[9]

The judgment below is reversed. The district court upon remand is directed to vacate its decree of October 1, 1970 and to dismiss the complaint.

Reversed and remanded, with directions.

9. We are not unaware of the district court's prognostication, quoted at pages 8 and 9 of the text from 317 F.Supp. at page 405, to the effect that "under the circumstances, I see no reasonable prospect of relief from state courts, certainly no prompt relief". We view this as simply an articulation of a "judicial hunch", not to be equated with the type of showing we think should be made before a federal district court should undertake to police the enforcement of state laws.