The STATE of Utah, Plaintiff and Respondent,

v.

Sandra Kay BANKHEAD, Defendant and Appellant.

No. 860012.

Supreme Court of Utah.

Oct. 20, 1986.

Thomas J. McCormick, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

PER CURIAM:

Defendant appeals her conviction under U.C.A., 1953, § 76–6–506.1 for fraudulent use of a credit card.

Testimony at trial established that on August 30, 1985, defendant made several purchases of wearing apparel at various stores in downtown Salt Lake City. To pay for the merchandise, she used a credit card belonging to Louie Sims and signed "Rita Sims" on the charge forms. When an employee at one of the stores became suspicious, the police were called. Defendant told the investigating officer that her name was Rita Sims and that the credit card belonged to her husband. The officer thereupon called Louie Sims, who stated that his wife's name was not Rita and that he had not authorized anyone to use his credit card. Defendant was thereupon arrested.

Mr. Sims owns an auto repair shop in Salt Lake City. He has been married to Thelma Sims for nineteen years, during which time he has periodically dated other women. He testified that when he first met defendant, in late 1984, he was dating

a woman by the name of Rita Lee. He said that defendant lived with her husband, Mark Butterfield, in a motel across the street from the auto shop. Sims testified that he started dating defendant about a week before her arrest. On the night of August 29, he took defendant dancing and, on that occasion, he used his credit card. He testified that he kept the card on the visor of his car and that defendant was with him when he replaced it on the visor after using it.

On the morning of August 30, defendant came to Sims' shop and asked him to help her get her husband out of her motel room. Sims accompanied defendant to her room and asked Butterfield to leave. Butterfield reluctantly left, but returned a few minutes later and, in anger, destroyed some of defendant's clothing. Sims returned to work and, later that afternoon, received the call from the police. Sims testified that he went to his car to verify that his credit card was missing, whereupon he notified the issuing bank to cancel his card.

At trial, defendant did not testify, but her theory was that because she was Sims' lover, it was all right for her to use the card to replace some of her belongings. The evidence was undisputed, however, that Sims had not authorized her to use his card and that she had used his card in the name of Rita Sims. The jury convicted defendant of four counts of "falsely signing evidence of a financial transaction card transaction," all second degree felonies. At sentencing, the trial judge entered a judgment of conviction for the next lower category of offense (third degree felony) and sentenced defendant to serve four concurrent terms of zero to five years in prison.

On appeal, defense counsel has filed an *Anders* brief[1] and has moved that he be permitted to withdraw. Counsel has argued issues raised by defendant, however,

and has included as an addendum to his brief defendant's own statement. Because we do not deem the case to be "wholly frivolous," we deny counsel's motion to withdraw and treat the merits of the issues argued in his brief.[2]

The first point raised is that defendant should have been sentenced under U.C.A., 1953, § 76–6–506.2, since it carries a lesser penalty for the same conduct proscribed by U.C.A., 1953, § 76–6–506.1. This issue was decided after defendant's notice of appeal was filed. In *State v. Gomez*, 722 P.2d 747 (Utah 1986), we squarely held that the two statutes do not have identical elements. The statute under which defendant was convicted has the additional element of fraudulently "signing" a card or sales slip.

■ Defendant also urges that her right to a jury trial was compromised since the jury panel did not represent a fair racial cross section of the community. Defendant is black, and she contends that because the jury did not include some members of her race, her constitutional rights were violated. U.C.A., 1953, § 78–46–16(1) requires that any challenge to the jury must be lodged before the jury is sworn. In the instant case, defendant's motion to quash the jury panel was not made until after all of the evidence was in and was therefore waived. In any event, the sixth amendment insures only that a particular segment of the community will not be systematically excluded from the jury venire. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Juries actually chosen need not "mirror the community and reflect the various distinctive groups in the population." *Taylor*, 419 U.S. at 538, 95 S.Ct. at 702. In the present case, there is no evidence of systematic exclusion of ju-

---

1. *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), *as adopted in State v. Clayton*, 639 P.2d 168 (Utah 1981).

2. *Clayton* suggests that when the arguments are not "wholly frivolous," we will call for a brief

on the merits. In this case, we believe that action is unnecessary because the points on appeal are adequately briefed in the *Anders* brief.

rors based upon racial considerations. Defendant's claim is therefore without merit.

In her own statement, defendant asserts that she had Sims' specific authorization to use the credit card. Because there is nothing in the record to support such factual claim, we do not address it on appeal.

Defendant's conviction is affirmed.