Thomas E. REDD, for himself and as guardian ad litem for Kevin H. Hickman and Shawn Reed, minors, Plaintiffs and Appellants,

v.

Kevin R. NEGLEY, W. Bruce Negley, Patricia L. Negley, and Grand County, Defendants and Appellees.

No. 19989.

Supreme Court of Utah.

Dec. 28, 1989.

---

Lowell V. Summerhays, Salt Lake City, Craig C. Halls, Blanding, for plaintiffs and appellants.

Henry Heath, Salt Lake City, Dayle M. Jeffs, Provo, for defendants and appellees.

HOWE, Associate Chief Justice:

This is an appeal from the trial court's denial of plaintiff Redd's challenge to the jury which was selected to try this case.[1] The trial court ruled that the challenge was not made timely, as required by Utah Code Ann. § 78–46–16 (1987), and explained that plaintiff's challenge was unsupported by any statistics and affidavits necessary to support a valid objection. Plaintiff relies exclusively on the fourteenth and sixth

amendments to the United States Constitution.

Plaintiff, a full-blooded American Indian, brought this action in the Seventh Judicial District Court in and for San Juan County for injuries arising out of an automobile accident. A panel of twenty-nine prospective jurors was called, from which a jury of eight was selected. Six of the prospective jurors called did not appear in court for jury selection. The record does not show how many of these were of American Indian descent. Two of the prospective jurors who did appear were of American Indian descent. Neither of them was on the jury which was selected.

The challenge to the jury occurred in the following manner. Before the jury was sworn, in the presence of the selected jurors, plaintiff's counsel approached the bench, whereupon a discussion occurred off the record. The court then asked both parties: "Subject to certain qualifications that we want to put on the record, gentlemen, I take it you pass [the selected jury] for cause then?" Plaintiff's counsel responded: "Yes, your Honor, and we reserve those rights." The jury was then sworn. Immediately after dismissing the jury for lunch, outside the presence of the jurors, the court asked plaintiff's counsel: "Mr. Summerhays, you indicated you had something you wanted to put on the record relative to the jury?"

The record then shows that only the following unsupported and vague oral objection was presented to the trial court by counsel for plaintiff:

The Plaintiff is a full-blooded Indian Navajo. I believe the county is 40 percent Indian; but only 12.5 percent of the proposed jury panel was indeed called, which we object to as not being representative. It was a cross section of the county, and this inparticularly [sic] prejudices our client in this matter because she feels as we feel that there exists in the county prejudice regarding the Indian blood. The problem is exasperated [sic] by the

---

1. This Court granted the motion for substitution of appellant Thomas E. Redd for Violet H. Redd, deceased.

fact that no Indians, your Honor, are on the final jury panel. And there should be 40 percent, which would give a minimum of three jurors who should be Indians on this jury.... The sociological impact in this county is somewhat discriminatory by whites in not exercising the need for Indians to be on the jury to protect the Plaintiff's position.

The trial court denied plaintiff's motion under Utah Code Ann. § 78–46–16(1) (Supp. 1983), which bars any challenge not made "[w]ithin seven days after the moving party discovered, or by the exercise of diligence could have discovered the grounds therefor[ ], and in any event before the trial jury is sworn to try the case."

■ It appears from the record that plaintiff objected to the jury selection prior to the swearing of the jury and that the jury was passed for cause only with the reservation that plaintiff's challenge could be later made. It does not appear that there were any means by which the races of the jurors who were called could be identified prior to their appearance on the morning of the trial. The challenge was therefore timely under Utah Code Ann. § 78–46–16(1) (1987), and the trial court erred in its ruling on that ground. *See State v. Bankhead,* 727 P.2d 216, 217 (Utah 1986) ("[Section] 78–46–16(1) requires that any challenge to the jury must be lodged before the jury is sworn.").

■ In denying plaintiff's motion, the trial judge explained that the objection needed to be supported by affidavits and statistics "[a]nd then it gives the Court a chance to say[:] 'Let's back up and re-do it this way.' But we haven't had an opportunity to do so." We agree. Plaintiff's objection cannot be viewed as anything more than an objection that there was not a proportionate number of Indians on the jury panel which would try his case. This is not a legally sufficient objection. *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690, 703 (1975). "The mere observation that a particular group is underrepresented on a particular panel does not support a constitutional challenge." *United States v. Grose,* 525 F.2d

1115, 1119 (7th Cir.1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976). Therefore, the error in ruling the objection untimely was harmless. The law requires only that the jury be indiscriminately drawn from among those persons eligible in the community for jury service. *Hoyt v. Florida,* 368 U.S. 57, 59, 82 S.Ct. 159, 161, 7 L.Ed.2d 118, 121 (1961). To establish a prima facie violation of the sixth amendment right to have an impartial jury selected from a representative cross-section of the community, the plaintiff must show:

(1) [T]hat the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group *in venires from which juries are selected* is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

(Italics added); *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 587 (1979); *see also State v. Tillman,* 750 P.2d 546, 575 (Utah 1987).

■ No facts establishing the second prong of the *Duren* test were presented to the trial judge upon which he could sustain plaintiff's objection. Counsel simply stated that he "believed" that the county was 40 percent Indian. His complaint that "only 12.5 percent of the proposed jury panel was indeed called" is unintelligible. His assertion that there were no Indians on the final jury panel and that there should have been 40 percent, which would be a minimum of three jurors, simply does not state an objection which the trial court could legally sustain. *State v. Bernal,* 137 Ariz. 421, 671 P.2d 399, 404 (1983). He did not submit an affidavit, proffer any evidence, or ask the court to take judicial notice that the county's population was 40 percent Indian. More seriously, he focused only on the composition of the eight jurors who were to try the case and did not attempt to show that a disproportionate number of Indians had been summoned for jury duty in the county, as shown by the names on the

"qualified jury wheel," Utah Code Ann. § 78–46–13, from which jurors are drawn. Even with a balanced pool of prospective jurors from which to draw, the "roll of the dice" will occasionally produce an imbalanced panel to try a given case. Because of that fact, a prima facie case cannot be made without analyzing the races of the jurors who are in the pool for jury service as shown by the "qualified jury wheel."

The dissent bases its conclusion that plaintiff's counsel made a prima facie case on certain language in the opinion in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson* was not concerned with the problem we have in the instant case but was concerned with the exclusion of a potential juror through the use of peremptory challenges. When the language in the *Batson* opinion is carefully examined, it does not support the dissent's position that a prima facie case can be established on the bare unsupported statements of counsel for a party.

The Court in *Batson v. Kentucky*, 476 U.S. at 95, 106 S.Ct. at 1722, 90 L.Ed.2d at 86–87, wrote:

> Since the ultimate issue is whether the State has discriminated in selecting the defendant's venire, however, the defendant may establish a prima facie case "in other ways than by evidence of long-continued unexplained absence" of members of his race "from many panels." *Cassell v. Texas*, 339 U.S. 282, 290 [70 S.Ct. 629, 633, 94 L.Ed. 839] (1950) (plurality opinion). In cases involving the venire, this Court has found a prima facie case on proof that members of the defendant's race were substantially underrepresented *on the venire from which his jury was drawn*, and that the venire was selected under a practice providing "the opportunity for discrimination." *Whitus v. Georgia*, [385 U.S.] at 552 [87 S.Ct. at 647]; *see Castaneda v. Partida*, [430 U.S.] at 494 [97 S.Ct. at 1280]; *Washington v. Davis*, [426 U.S.] at 241 [96 S.Ct. at 2048]; *Alexander v. Louisiana*, [405

U.S.] at 629–31 [92 S.Ct. at 1224–26].[2] This combination of factors raises the necessary inference of purposeful discrimination because the Court has declined to attribute to chance the absence of black citizens on a particular jury array where the selection mechanism is subject to abuse. When circumstances suggest the need, the trial court must undertake a "factual inquiry" that "takes into account all possible explanatory factors" in the particular case. *Alexander v. Louisiana*, [405 U.S.] at 630, [92 S.Ct. at 1225, 31 L.Ed.2d at 541–42].

(Italics added.) The reference to "the venire from which his jury was drawn" means the pool of jurors from which a particular jury is drawn.

In the cases cited by the court in *Batson v. Kentucky*, where the Court found a prima facie case, concrete evidence was presented, not just counsel's bald assertions. For example, in *Whitus v. Georgia*, the evidence showed that 42.6 percent of the county's male population over age 21 was black and thus eligible for jury service. However, out of the 90–person prospective petit juror pool for the particular term of court, only 7 were black. 385 U.S. at 550, 87 S.Ct. at 646–47, 17 L.Ed.2d at 604. Similarly, in *Alexander v. Louisiana*, 21.06 percent of the population over 21 was black. Out of the 400 persons selected for grand jury service whose names were placed in the pool, only 6.75 percent were black. 405 U.S. at 627–28, 92 S.Ct. at 1223–24, 31 L.Ed.2d at 540. Finally, in *Castaneda v. Partida*, 79.1 percent of the county's population was Mexican–American. Yet an 11–year survey showed that 870 persons were summoned to serve as grand jurors but only an average of 39 percent of them were Mexican–American. Only 50 percent of the pool from which the grand jury which indicted the defendant was drawn were Mexican–American. 430 U.S. at 486–87, 97 S.Ct. at 1276, 51 L.Ed.2d at 505–06. In *People v. Harris*, 36 Cal.3d

2. *Whitus v. Georgia*, 385 U.S. 545, 552, 87 S.Ct. 643, 647–48, 17 L.Ed.2d 599, 605 (1967); *see Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498, 510–11 (1977);

*Washington v. Davis*, 426 U.S. 229, 241, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597, 608 (1971); *Alexander v. Louisiana*, 405 U.S. 625, 629–31, 92 S.Ct. 1221, 1224–25, 31 L.Ed.2d 536, 541–42 (1972).

36, 47, 679 P.2d 433, 438, 201 Cal.Rptr. 782, 787, *cert. denied,* 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984), which is relied upon by the dissent, a survey of 959 potential jurors called to serve over a 3–month period was relied upon to establish a prima facie case of underrepresentation of blacks and Hispanics. In all of those cases, as can be readily seen, the underrepresentation of minority jurors was well documented and demonstrated. Unlike those cases, this plaintiff has neither attempted to demonstrate nor even contended that there is any underrepresentation of American Indians in the qualified jury wheel from which jurors are selected to serve on juries in San Juan County.

We therefore affirm the trial court due to plaintiff's failure to establish a prima facie case. Given the bald, unsupported, and legally insufficient statements made in the challenge presented to the court, the trial judge clearly had no alternative but to deny the objection. The trial judge was correct in his observation that the objection needed to be supported by affidavits and statistics.

As an aside, it should be noted that had the trial court required the attendance of the six missing potential jurors, the imbalance which plaintiff complains about might have been rectified. Apparently, plaintiff's counsel made no motion to compel their attendance, nor did he object to proceeding without them.

Affirmed.

HALL, C.J., and STEWART, J., concur.

ZIMMERMAN, Justice (concurring).

I concur in the majority's disposition of this appeal. The objection lodged by plaintiffs' counsel was not sufficient to properly raise the issue of an unconstitutional exclusion of native Americans from the venire. However, if there are relatively few native Americans on the venires in San Juan County, that fact would certainly raise seri-

ous constitutional questions, as the case law cited by Justice Durham demonstrates.

DURHAM, Justice (dissenting).

I dissent. I fear that the majority's failure to correctly apply the law to the facts presented here may impair the federal constitutional right to an impartial jury in Utah.[1]

The United States Supreme Court has held that the constitutional principles of due process and equal protection embodied in the fourteenth amendment preclude discriminatory jury selection in state courts.

> The Fourteenth Amendment, in addition to due process and equal protection clauses, declares that "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." So empowered, the Congress on March 1, 1875, enacted that "no citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for service as grand or petit juror in any court of the United States, or of any State, on account of race, color, or previous condition of servitude.... For us the majestic generalities of the Fourteenth Amendment are thus reduced to a concrete statutory command...."

*Fay v. People of State of New York,* 332 U.S. 261, 282, 67 S.Ct. 1613, 1625, 91 L.Ed. 2043 (1947) citing Act of Mar. 1, 1875, ch. 114, 18 Stat. 336 (current version at 18 U.S.C. § 243 (1982)).

The Fifth Circuit Court of Appeals has held that "[a] just and fair trial by an unbiased, unprejudiced and impartial tribunal is one of the great American constitutional principles. There can be no 'due process' or 'equal protection' unless that principle remains inviolate." *Billingsley v. Clayton,* 359 F.2d 13, 15 (5th Cir.1966), *cert. denied,* 385 U.S. 841, 87 S.Ct. 92, 17 L.Ed.2d 74 (1966).

The constitutional protection against discriminatory jury selection in state courts is the same for criminal and civil cases. "The American tradition of trial by jury, con-

---

**1.** The parties have not advanced, nor has the majority opinion relied upon, a separate state constitutional analysis of this problem. I there-

fore rely exclusively on federal constitutional analysis.

sidered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community." *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181 (1946); *see also Simmons v. Jones*, 317 F.Supp. 397, 403 (S.D.Ga.1970) (in a jury trial in state court, "a litigant in a civil case is entitled to a trial before a jury drawn from a list constituting a fairly representative cross-section of the community"), *rev'd on other grounds*, 478 F.2d 321 (5th Cir.1973).

The majority is correct when it states that the federal constitution does not require any minimum proportion of members of a racial class on each jury panel. *See Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975) ("Defendants are not entitled to a jury of any particular composition."). The only requirement is that "the jury be indiscriminately drawn from among those eligible in the community for jury service...." *Hoyt v. Florida*, 368 U.S. 57, 59, 82 S.Ct. 159, 161, 7 L.Ed.2d 118 (1961).

The majority is not correct, however, in its finding that plaintiff did not establish a prima facie showing of a violation of the sixth amendment. As the majority decision notes, to establish a prima facie violation of the constitutional requirement that the jury be selected from a fair cross-section of the community, a party must show

(1) that the group alleged to be excluded is a "distinctive" group in the community;

(2) that the representation of [a "distinctive"] group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

(3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

More recently, the United States Supreme Court, in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), addressed the nature of the prima facie showing which must be made. Although the majority opinion refers to *Batson*, it does not include some important language from the decision:

The defendant initially must show that he is a member of a racial group capable of being singled out for differential treatment. In combination with [that] evidence, a defendant may then make a prima facie case by proving that in the particular jurisdiction members of his race have not been summoned for jury service over an extended period of time. Proof of systematic exclusion from the venire raises an inference of purposeful discrimination because the "result bespeaks discrimination."

Since the ultimate issue is whether the State has discriminated in selecting the defendant's venire, however, the defendant may establish a prima facie case "in other ways than by evidence of long-continued unexplained absence" of members of his race "from many panels." In cases involving the venire, this Court has found a prima facie case on proof that members of the defendant's race were substantially underrepresented on the venire from which his jury was drawn, and that the venire was selected under a practice providing "the opportunity for discrimination."

....

Thus, since the decision in *Swain*, this Court has recognized that a defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire by relying solely on the facts concerning its selection *in his case*.

*Id.* at 94–95, 106 S.Ct. at 1722 (citations omitted). *Batson* was decided after the trial in the case, and neither counsel nor the trial court had the benefit thereof at the time of trial.

The majority opinion concludes that plaintiff's objection to the jury selection in the case can only be viewed as an objection to the absence of any Indians on the jury panel ultimately selected. It is true that plaintiff's counsel made only a cursory argument on the fair representation issue and has not clearly targeted his objections to only the selection and composition of the

jury venire or to the exercise by the defense of its peremptory challenges to eliminate both of the American Indians from the selected panel. Notwithstanding those deficiencies in plaintiff's framing of the issues, however, I am persuaded that plaintiff has met the burden of making a prima facie showing.

This Court may take judicial notice of the fact that plaintiff, as a full-blooded American Indian, was a member of a cognizable racial group. *See United States v. Chalan*, 812 F.2d 1302 (10th Cir.1987). We may likewise notice the fact, not disputed by defendants, that in 1984 the population of San Juan County (from which the venire was drawn) was approximately forty-five percent Indian.[2]

There were only two Indians on the venire selected in this case. This means that the total representation of Indians on the venire was less than ten percent. That figure is in dramatic contrast to the forty-five percent population figure and itself raises an inference of possible systematic exclusion. The trial court erroneously believed that the number of Indians in the total population was irrelevant and that only the composition of the registered voter list (the sole source of jurors at the time) need be compared to that of the venire. I believe this Court should hold that such an overwhelming disparity between the total population and the venire population makes a prima facie showing of underrepresentation.[3]

Although use of total population figures may legitimately be criticized, I agree with the following conclusion of the California Supreme Court in *People v. Harris*, 36 Cal.3d 36, 679 P.2d 433, 201 Cal.Rptr. 782, *cert. denied*, 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984):

The question raised by the difficulty of producing statistics concerning the precise proportion of jury eligibles is who should bear the burden of proof on whether a disparity exists. In our view, although more refined statistics would be preferable if available, when they are not, it is sufficient for the defendant to show a significant disparity based on the use of total population figures. The burden then shifts to the state to either show that when the group total population is reduced to jury eligibles, no underrepresentation exists, or to justify the underrepresentation by showing "that a significant state interest be manifestly and primarily advanced by those aspects of the jury-selection process such as exemption criteria, that result in the disproportionate exclusion of a distinctive group." (*Duren v. Missouri*, 439 U.S. at 367–68, 99 S.Ct. at 670).

*People v. Harris*, 36 Cal.3d at 54–55, 679 P.2d at 443, 201 Cal.Rptr. at 792; *see also Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977).

I would conclude that plaintiff's showing is sufficient to satisfy the second part of the *Duren* test, "that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community." *Duren*, 439 U.S. at 364, 99 S.Ct. at 668.

The majority opinion does not address the third prong of the *Duren* test; its analysis relies exclusively on the determination that plaintiff failed to satisfy the second prong of *Duren*. Since I believe that part of the test is met in this case, I will also address the third prong.

The third prong of the *Duren* test requires that a prima facie case of a violation of the fair cross-section requirement include a showing that the underrepresentation is due to "systematic exclusion of the group in the jury selection process." *Id.* Defendants rely on the absence of allegations that some affirmative discriminatory

---

**2.** The population of San Juan County in 1980 was 12,253, 5,600 of which were American Indians. This means that 45.7 percent of the population of San Juan County was American Indian. U.S. Bureau of the Census, *1980 Census of Population, General Population Characteristics,* *Utah*, 11–12 (U.S. Government Printing Office, 1982).

**3.** This Court has recently acknowledged the inadequacy of voter registration records as a sole source for jurors and required the counties to adopt a multiple-source selection system.

act has resulted in the exclusion of Indians either from voter lists or from venires. The United States Supreme Court, however, has consistently analyzed substantial disparity cases in terms of a "rule of exclusion":

> The idea behind the rule of exclusion is not at all complex. If a disparity is sufficiently large, then it is unlikely that it is due solely to chance or accident, and, in the absence of evidence to the contrary, one must conclude that racial or other class-related factors entered in the selection process.

*Castaneda v. Partida,* 430 U.S. at 494 n. 13, 97 S.Ct. at 1280 n. 13 (citations omitted). Actual discrimination, lack of good faith, or actual prejudice is not required; an inference of discrimination may be rebutted only by proof that the underrepresented group is less eligible or available for jury duty. *See* Kairys, Kadane & Lehoczky, *Jury Representativeness: A Mandate for Multiple Source Lists,* 65 Cal.L.Rev. 776 (1977), and cases cited therein.

Systematic underrepresentation means that a significant disparity is "inherent in the particular jury-selection process utilized." *Duren,* 439 U.S. at 366, 99 S.Ct. at 669. The plaintiff in the present case has demonstrated that the system of selection in San Juan County has resulted in a denial of a jury pool representing a fair cross-section of the community.

Having demonstrated a prima facie case of underrepresentation on the basis of a gross statistical disparity, plaintiff is entitled to the benefit of an inference that the selection method being used causes the underrepresentation. "All that need be shown is that the system of selection results in denial of a jury pool representing a fair cross-section of the community." *People v. Harris,* 36 Cal.3d at 58, 679 P.2d at 446, 201 Cal.Rptr. at 795. As the California Supreme Court concluded:

> [D]efendant's use of statistical evidence using total population figures was sufficient to make a prima facie showing of a gross disparity resulting in a violation of defendant's right to an impartial jury drawn from a fair cross-section of the community. The burden then shifts to the state to rebut the prima facie case. The state may be able to do so by showing through use of figures defining those presumptively eligible for jury service that no disparity of constitutional significance exists, or that even with the use of multiple sources and all other practical means, a certain level of disparity is unavoidable. Finally, it may be able to justify the underrepresentation by showing "that a significant state interest [is] manifestly and primarily advanced by those aspects of the jury selection process ... that result in the disproportionate exclusion." (*Duren v. Missouri, supra,* 439 U.S. at pp. 367–368, 99 S.Ct. at pp. 670–671.) In the present case, however, the state has not attempted to rebut the defendant's proof but has shortsightedly rested its entire argument on the mistaken claim that defendant failed to present a prima facie case.

*People v. Harris,* 36 Cal.3d at 59, 679 P.2d at 446, 201 Cal.Rptr. at 795.

I agree. The fact situation in this case offers a legitimate and appropriate opportunity for this Court to apply the federal fair representation standard to a civil case. Plaintiff has made a prima facie showing of a violation of the sixth amendment. This Court should find that the blatant underrepresentation of Indians on the venire in this case violated plaintiff's right to an impartial jury; it is difficult to imagine a more appropriate fact situation for application of the federal fair representation standard.

I would therefore reverse the trial court's ruling on the propriety of the challenge to the jury venire and remand for a hearing on the fair representation issue, with the burden of proof at that hearing to rest with defendants.