2006 UT 39

**STATE of Utah, Plaintiff and Petitioner,**

v.

**Anthony James VALDEZ, Defendant and Respondent.**

No. 20040633.

Supreme Court of Utah.

July 21, 2006.

Mark L. Shurtleff, Att'y Gen., Christine Soltis, Asst. Att'y Gen., Byron F. Burmester, Salt Lake City, for petitioner.

John D. O'Connell, Jr., Lori Seppi, Salt Lake City, for respondent.

DURHAM, Chief Justice:

¶ 1 In this opinion, we clarify an important procedural rule that has apparently caused some confusion in Utah's lower courts. The issues in this case arise from the State's use of its peremptory challenges to exclude female potential jurors from the jury at the trial of Anthony James Valdez. Valdez objected, arguing that the State's use of its peremptory challenges was unconstitutional under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[1] However, Valdez did not raise his *Batson* challenge until after the trial jury had been empaneled and sworn in and the remainder of the venire dismissed. We accepted certiorari to consider whether Valdez's *Batson* challenge was timely under these circumstances.[2]

¶ 2 We hold that a *Batson* challenge is only timely if raised both before the jury is sworn and before the remainder of the venire is excused. Under firmly established Utah law, a *Batson* challenge is only timely if it is raised before the jury is sworn. We take the opportunity provided by this case to clarify that a *Batson* objection must also be raised before the venire is dismissed. Accordingly, we reverse the court of appeals and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 3 Valdez was prosecuted in district court on five charges: aggravated burglary, aggravated assault, child abuse, possession of a dangerous weapon by a restricted person, and criminal mischief. On October 29, 2002, jury selection for Valdez's trial began. The initial jury venire summoned to the district court consisted of eleven men and fourteen women. The district court removed three men and two women for cause on its own motion and without objection from Valdez or the State. A third woman was excused for cause by Valdez over the State's objection. The State then used all four of its peremptory challenges to remove women from the jury panel; Valdez used all four of his per-

---

1. In *Batson v. Kentucky*, the United States Supreme Court held that a prosecutor's use of racially motivated peremptory challenges violates the Equal Protection Clause of the Fourteenth Amendment. 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Supreme Court has since extended the reasoning of *Batson* to the use of peremptory challenges to exclude jurors solely on the basis of gender. *See J.E.B. v. Alabama*, 511 U.S. 127, 146, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) ("[T]he Equal Protection Clause prohibits discrimination in jury selection on the basis of gender...."). Thus, Valdez's challenge to the State's allegedly improper use of its peremptory challenges technically falls under *J.E.B.* However, in light of the Supreme Court's increasing jurisprudence in this area, an objection to an opponent's use of peremptory challenges brought under the Equal Protection Clause is now generally referred to as a "*Batson* challenge." *See, e.g., State v. Parrish*, 2005 MT 112, ¶ 13, 327 Mont. 88, ¶ 13, 111 P.3d 671, 674, ¶ 13 (referring to a defendant's objection to the prosecutor's use of peremptory challenges to exclude men from the jury as a "*Batson* challenge"). Therefore, we refer to Valdez's challenge as a *Batson* challenge.

2. We granted certiorari in this case on two issues: (1) whether a *Batson* challenge may be deemed timely if the jury has been sworn and the remainder of the venire excused; and (2) whether the court of appeals applied the correct criteria for a *Batson* analysis and the correct standard of review on appeal. Because our holding on the first issue is dispositive, we do not reach the second.

emptory challenges against men. The jury selected to try the case consisted of four men and four women. Valdez did not object to the State's use of its peremptory strikes at any point during the jury selection process.

¶ 4 After the trial jury had been empaneled, the remainder of the venire was excused from service. The district court judge then swore the jury in, read the information to them, and gave them preliminary instructions. The court then dismissed the jury for lunch, and counsel remained in the courtroom to converse with the judge. After discussing potential jury instructions with counsel, the judge asked whether counsel wanted to address anything else before the court recessed. At that point, Valdez's counsel raised a *Batson* challenge, arguing that the State's use of its peremptory challenges discriminated on the basis of gender.

¶ 5 In support of his *Batson* challenge, Valdez argued that a prima facie pattern of discrimination could be found in the State's use of its peremptory challenges to exclude only female jurors from the trial jury. In response, the State argued that Valdez's *Batson* challenge was untimely because the jury had already been seated and sworn. The district court did not explicitly rule on the timeliness of Valdez's *Batson* challenge, but stated "notwithstanding that, can you give me a basis to rebut [a] *Batson* type challenge?" The State then provided gender-neutral explanations for each of its four peremptory challenges. Valdez offered no further argument. The district court ruled that the State's peremptory challenges were gender neutral, related to the case, specific, and legitimate.[3] Accordingly, the district court rejected Valdez's *Batson* challenge.

¶ 6 Valdez's trial proceeded, and he was convicted of aggravated burglary, possession of a dangerous weapon by a restricted person, and criminal mischief. Valdez subsequently appealed the district court's denial of

his *Batson* challenge to the Utah Court of Appeals. On appeal, Valdez also challenged the State's use of evidence regarding Battered Woman Syndrome in his trial on the ground that it was prejudicial.

¶ 7 A panel of the Utah Court of Appeals reversed the district court. The court of appeals noted that a *Batson* challenge must be timely raised and that standards for timeliness are established by local procedures. *State v. Valdez*, 2004 UT App 214, ¶ 7, 95 P.3d 291. In determining whether Valdez's *Batson* challenge was timely under Utah law, the court relied primarily on two of its prior opinions: *Salt Lake County v. Carlston*, 776 P.2d 653, 655 (Utah Ct.App.1989), and *State v. Harrison*, 805 P.2d 769, 775–76 (Utah Ct. App.1991).[4] *Valdez*, 2004 UT App 214, ¶¶ 7–10, 95 P.3d 291. While the court of appeals recognized that *Carlston* had favorably cited other jurisdictions' timeliness rules that bar *Batson* challenges after the jury has been sworn and the venire dismissed, *Valdez*, 2004 UT App 214, ¶ 8, 95 P.3d 291 (citing *Carlston*, 776 P.2d at 655–56), it chose to decide the present case under *Harrison*, *id.* ¶¶ 9–10. The court cited *Harrison* for the proposition that the timeliness of a *Batson* challenge is governed by rule 18(c)(2) of the Utah Rules of Criminal Procedure. *Id.* ¶ 9 (citing *Harrison*, 805 P.2d at 776). The court of appeals stated that a district court may consider a *Batson* challenge that is not raised until after the jury is sworn and the venire dismissed if it finds "good cause" under rule 18(c)(2). *Id.* ¶¶ 10–11 (citing *Harrison*, 805 P.2d at 776). The court also stated that if a district court allows counsel to proceed with a *Batson* argument following a timeliness objection, it "impliedly finds good cause under rule 18." *Id.* (citing *Harrison*, 805 P.2d at 776).

¶ 8 Based on this legal framework, the court of appeals held that the district court had impliedly found good cause to allow Valdez's *Batson* challenge to proceed because it

---

3. The district court's ruling corresponds to the requirements set forth in *Batson*, 476 U.S. at 97–99, 106 S.Ct. 1712, and recognized by this court in *State v. Cantu*, 778 P.2d 517, 518 (Utah 1989).

4. The court of appeals mistakenly cited *State v. Harrison*, 805 P.2d 769 (Utah Ct.App.1991), as an opinion of the Utah Supreme Court. *See State v.*

*Valdez*, 2004 UT App 214, ¶ 9, 95 P.3d 291 ("In *State v. Harrison*, the Utah Supreme Court applied rule 18's good cause provision to review an untimely *Batson* challenge."). We clarify that *Harrison* was an opinion of the Utah Court of Appeals, not of this court.

had not explicitly ruled on the State's timeliness objection and had asked the State to rebut Valdez's argument. *Id.* The court also stated that it could not adopt the rule proposed by the State—that a *Batson* challenge must be brought before the jury has been sworn and the remainder of the venire dismissed—because the rule was not " 'firmly established and regularly followed.' " *Id.* ¶¶ 8, 11 (quoting *Ford v. Georgia,* 498 U.S. 411, 423, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)). According to the court of appeals, "in the absence of any firmer and more established authority on the subject, we could not prevent appellate review of Valdez's constitutional claim due to lack of timeliness." [5] *Id.* ¶ 11.

¶ 9 After ruling on the timeliness issue, the court of appeals proceeded to address the merits of Valdez's *Batson* challenge. *Id.* ¶¶ 12–30. Applying an abuse of discretion standard of review, *id.* ¶ 17, the court held that most of the proffered justifications for the State's strikes were not clear and specific and lacked a relationship to the case being tried, *id.* ¶¶ 26–28. The court of appeals therefore ruled that the district court had abused its discretion by rejecting Valdez's *Batson* challenge and reversed and remanded for a new trial. *Id.* ¶¶ 30–31. Because the court found the denial of Valdez's *Batson* challenge dispositive, it did not reach Valdez's arguments regarding the admissibility of the Battered Woman Syndrome evidence introduced by the State at trial. *Id.* ¶ 17 n. 2.

¶ 10 The State petitioned this court for certiorari to review the decision of the court of appeals. We granted certiorari and have jurisdiction pursuant to Utah Code section 78–2–2(3)(a) (2002).

## STANDARD OF REVIEW

 ¶ 11 On certiorari, "we review the decision of the court of appeals, and not that of the district court." *State v. Hansen,* 2002 UT 125, ¶ 25, 63 P.3d 650 (citation omitted). Whether Valdez's *Batson* challenge was timely raised is a question of law. We review questions of law for correctness, granting no deference to the legal conclusions of the court of appeals. *Thomas v. Color Country Mgmt.,* 2004 UT 12, ¶ 9, 84 P.3d 1201.

## ANALYSIS

¶ 12 We granted certiorari on two issues: (1) whether a *Batson* challenge may be deemed timely if the jury has been sworn and. the remainder of the venire excused; and (2) whether the court of appeals applied the correct criteria for a *Batson* analysis and the correct standard of review on appeal. Because we hold that Valdez's *Batson* challenge was not timely, we do not reach the second issue, and therefore express no views on the criteria and standard of review applied by the court of appeals for *Batson* challenges.[6] Accordingly, our analysis is confined to a discussion of when a *Batson* challenge must be raised in order to be considered timely under Utah law.

## A BATSON CHALLENGE MUST BE RAISED BEFORE THE JURY IS SWORN AND BEFORE THE REMAINDER OF THE VENIRE IS DISMISSED IN ORDER TO BE TIMELY UNDER UTAH LAW

¶ 13 Before addressing Utah law regarding the timeliness of *Batson* challenges, we discuss the history of *Batson* challenges in order to provide context for our holding. The United States Supreme Court has long held that the Equal Protection Clause of the Fourteenth Amendment prohibits purposeful racial discrimination in the selection of jurors. *See Strauder v. West Virginia,* 100

---

5. The court of appeals noted that "[t]his issue would best be addressed by an amendment to the Utah Rules of Criminal Procedure." *Valdez,* 2004 UT App 214, ¶ 11 n. 1, 95 P.3d 291.

6. Our decision should not be read either as an endorsement or as a rejection of the court of appeals' approach regarding the second issue. We suggest that parties raising *Batson* challenges continue to follow the framework established by the United States Supreme Court and our prior *Batson* jurisprudence. *See, e.g., Johnson v. California,* 545 U.S. 162, 125 S.Ct. 2410, 2416–19, 162 L.Ed.2d 129 (2005) (addressing the criteria for a *Batson* analysis); *State v. Colwell,* 2000 UT 8, ¶¶ 14–23, 994 P.2d 177 (same); *State v. Higginbotham,* 917 P.2d 545, 546–49 (Utah 1996) (same).

U.S. 303, 309, 25 L.Ed. 664 (1880); *Martin v. Texas*, 200 U.S. 316, 319, 26 S.Ct. 338, 50 L.Ed. 497 (1906). The Court first applied this principle in the context of peremptory challenges in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In *Swain*, the Court held that it was a violation of the Equal Protection Clause for a prosecutor to purposefully use peremptory challenges to exclude African American jurors from the petit jury when the defendant is also African American. *Id.* at 222–24, 85 S.Ct. 824. However, the case set an exceedingly high evidentiary burden for defendants. The *Swain* Court noted that a black defendant could only establish a prima facie case of purposeful discrimination by demonstrating that the prosecutor had continuously and systematically used peremptory challenges to strike African Americans from the jury venire "in case after case, whatever the circumstances." [7] *Id.* at 223, 85 S.Ct. 824. Following *Swain*, most lower courts applying its reasoning required African American defendants who challenged a prosecutor's use of peremptory strikes on equal protection grounds to demonstrate that the prosecutor had exercised peremptory strikes in a discriminatory fashion over a number of cases. *See Batson v. Kentucky*, 476 U.S. 79, 92–93 & n. 16, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

¶ 14 In *Batson*, the Court rejected *Swain's* "crippling burden of proof," noting that under *Swain* "prosecutors' peremptory challenges [had become] largely immune from constitutional scrutiny." *Id.* at 92–93, 106 S.Ct. 1712; *see also* Christopher J. Petrini, *Batson v. Kentucky: A Promise Unfulfilled,*

58 UMKC L.Rev. 361, 365 (1990) (noting that in the twenty-one years between *Swain* and *Batson*, only two defendants were able to establish a case of purposeful discrimination under *Swain* ). The *Batson* Court thus replaced the *Swain* test with an evidentiary framework similar to that of Title VII of the 1964 Civil Rights Act, which allows the opponent of a peremptory challenge to establish a violation of the Equal Protection Clause based "solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Batson*, 476 U.S. at 96, 106 S.Ct. 1712; *see also Johnson v. California*, 545 U.S. 162, 125 S.Ct. 2410, 2418 n. 7, 162 L.Ed.2d 129 (2005) (discussing similarity of *Batson* framework to "the burden-shifting framework in cases arising under Title VII of the Civil Rights Act of 1964").

¶ 15 The *Batson* Court established a three-step analytical framework to be applied by a court considering whether a litigant's use of peremptory challenges violates the Equal Protection Clause.[8] *Batson*, 476 U.S. at 93–97, 106 S.Ct. 1712. First, the opponent of the peremptory challenges must establish a prima facie case of purposeful discrimination in the selection of the petit jury. *Id.; see also Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (discussing the three-part *Batson* test); *State v. Colwell*, 2000 UT 8, ¶¶ 17–18, 994 P.2d 177 (same). In other words, the challenging party must "produc[e] evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." [9]

7. It should be noted that the evidence offered by the defendant in *Swain*—that the prosecutors in his case had used their peremptory challenges to exclude African Americans from the petit jury—was deemed insufficient to establish a prima facie case of systematic purposeful discrimination. *Swain v. Alabama*, 380 U.S. 202, 224–28, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

8. The *Batson* Court discussed this three-part test in the context of an African American defendant objecting to a prosecutor's use of peremptory challenges to exclude African American jurors from the petit jury. *Batson*, 476 U.S. at 97–98, 106 S.Ct. 1712. However, the Court's subsequent cases have expanded the applicability of the *Batson* test to the point that it now generally applies to all objections to an opponent's use of

peremptory challenges that are based on the Equal Protection Clause. *See, e.g., Johnson*, 125 S.Ct. at 2416 (noting that the *Batson* steps "together guide trial courts' constitutional review of peremptory strikes"). Accordingly, the *Batson* test will be set forth here in general terms, based on its present applicability.

9. The Supreme Court has consistently declined to specify what type of evidence the challenging party must offer to establish a prima facie case, and instead has relied on trial judges to determine whether "all relevant circumstances .... give rise to an inference of discrimination." *Batson*, 476 U.S. at 96–97, 106 S.Ct. 1712; *see also Johnson*, 125 S.Ct. at 2416 ("[A] prima facie case of discrimination can be made out by offering a wide variety of evidence, so long as the sum of

*Johnson*, 125 S.Ct. at 2417; *see also Batson*, 476 U.S. at 96, 106 S.Ct. 1712 (noting that the challenging party must demonstrate that the facts and circumstances raise an inference that a juror was excluded from the petit jury on account of race); *Colwell*, 2000 UT 8, ¶ 18, 994 P.2d 177 ("The challenging party must first make out the prima facie case by presenting facts adequate to raise an inference of improper discrimination."). Second, once the opponent has established a prima facie case, the burden shifts to the proponent of the peremptory challenges to rebut the prima facie case by offering neutral, nondiscriminatory justifications for the peremptory challenges. *See Batson*, 476 U.S. at 97, 106 S.Ct. 1712; *Johnson*, 125 S.Ct. at 2416; *Colwell*, 2000 UT 8, ¶ 19, 994 P.2d 177. A proponent cannot meet this burden by simply denying a discriminatory motive or professing good faith. *Batson*, 476 U.S. at 98, 106 S.Ct. 1712. Rather, a proponent must proffer justifications that are: (1) neutral; (2) related to the particular case to be tried; (3) reasonably specific and clear; and (4) legitimate. *See id.* at 98 n. 20, 106 S.Ct. 1712 ("[T]he prosecutor must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981))); *State v. Higginbotham*, 917 P.2d 545, 548 (Utah 1996) (listing the four factors discussed above) (citations omitted). Finally, if the proponent provides a sufficient explanation for the peremptory challenges, the trial court must determine whether the opponent of the peremptory challenges has proven purposeful discrimination.[10] *Purkett*, 514 U.S. at 767, 115 S.Ct. 1769; *Johnson*, 125 S.Ct. at 2416; *Higginbotham*, 917 P.2d at 548.

¶ 16 Since deciding *Batson*, the Supreme Court has continually increased the scope of the *Batson* test. *See Powers v. Ohio*, 499 U.S. 400, 409–10, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (holding that *Batson* applies to a prosecutor's use of peremptory challenges regardless of whether the stricken juror is of the same race as the defendant); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 630, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (extending the *Batson* rule to the use of peremptory challenges by private litigants in civil cases); *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (applying *Batson* to criminal defendants' use of peremptory challenges); *J.E.B. v. Alabama*, 511 U.S. 127, 146, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (holding that the Equal Protection Clause also prohibits discrimination in jury selection on the basis of gender).

¶ 17 Throughout its *Batson* jurisprudence, the Court has stated that the equal protection right the *Batson* test is designed to protect is premised on several important constitutional interests. First, the litigants are constitutionally entitled to have their case tried by a jury that is selected by fair and nondiscriminatory methods.[11] *See Strauder*, 100 U.S. at 307–08; *Batson*, 476 U.S. at 85–86, 106 S.Ct. 1712; *see also J.E.B.*, 511 U.S. at 128, 114 S.Ct. 1419 (stating that litigants in criminal and civil trials "have an equal protection right to jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudice"). Second, the "individual jurors themselves have a right to nondiscriminatory jury selection procedures." *J.E.B.*, 511 U.S. at 140–41, 114 S.Ct. 1419; *see also McCollum*, 505 U.S. at 48, 112 S.Ct.

---

the proffered facts gives 'rise to an inference of discriminatory purpose.' " (quoting *Batson*, 476 U.S. at 94, 106 S.Ct. 1712)).

10. This is because the ultimate burden of persuasion in a *Batson* challenge rests with the opponent of the peremptory challenges. *Johnson*, 125 S.Ct. at 2417–18. "The first two *Batson* steps govern the production of evidence that allows the trial court to determine the persuasiveness of the defendant's constitutional claim." *Id.* at 2418. In the third step, the court weighs the evidence obtained in the first two steps and determines whether the opponent of the peremptory chal-

lenges has carried his burden to prove purposeful discrimination. *Id.*

11. Unconstitutional discrimination in jury selection denies the litigant "the protection that a trial by jury is intended to secure[:]" trial by a jury of peers. *Batson*, 476 U.S. at 86, 106 S.Ct. 1712; *see also J.E.B.*, 511 U.S. at 140, 114 S.Ct. 1419 ("The litigants are harmed by the risk that the prejudice that motivated the discriminatory selection of the jury will infect the entire proceedings.").

2348 ("[D]enying a person participation in jury service on account of his race unconstitutionally discriminates against the excluded juror."). This right is premised on the importance of the jury system in American democracy.[12] *See, e.g., Powers,* 499 U.S. at 407, 111 S.Ct. 1364 ("[F]or most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process."); *J.E.B.,* 511 U.S. at 141–42, 114 S.Ct. 1419 ("All persons, when granted the opportunity to serve on a jury, have the right not to be excluded summarily because of discriminatory and stereotypical presumptions . . . ."). Finally, the entire community has an interest in fair jury selection procedures. *See Batson,* 476 U.S. at 87, 106 S.Ct. 1712. When jurors are excluded pursuant to discriminatory selection criteria, "public confidence in the fairness of our system of justice" is undermined. *Id.* Accordingly, courts must ensure that jury selection procedures are fair and nondiscriminatory, for if a court allows a juror to be wrongfully excluded it becomes a "willing participant. in a scheme that could only undermine the very foundation of our system of justice." *McCollum,* 505 U.S. at 49, 112 S.Ct. 2348 (citations and internal quotation marks omitted).

¶ 18 While the Supreme Court has been very explicit regarding the applicability of and basis for the *Batson* test, it has consistently declined to formulate procedural rules—such as timeliness standards—governing *Batson* challenges. In *Batson,* the defendant had challenged the prosecutor's use of peremptory strikes by moving to discharge the jury before it was sworn. 476 U.S. at 83, 106 S.Ct. 1712. Though the Court noted that this was "a timely objection," *id.* at 100, 106 S.Ct. 1712, it specifically declined to establish "particular procedures" to be followed by courts applying *Batson, id.* at 99, 106 S.Ct. 1712. Instead, the Court stated that it was up to state courts, with their "variety of jury selection practices," to establish procedural guidelines. *Id.* at 99 & n. 24, 106 S.Ct. 1712.

¶ 19 The Court expanded on this reasoning in *Ford v. Georgia,* 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). Under *Ford,* "local rules [provide] the law governing the timeliness of a [*Batson*] claim." *Id.* at 423, 111 S.Ct. 850. Thus, the Court stated that "a state court may adopt a general rule that a *Batson* claim is untimely if it is raised for the first time on appeal, or after the jury is sworn, or before its members are selected." *Id.* While the Court did not set forth any specific guidelines regarding timeliness, it noted that "[t]he requirement that any *Batson* claim be raised not only before trial, but in the period between the selection of jurors and the administration of their oaths, is a sensible rule." *Id.* at 422–23, 111 S.Ct. 850. However, the Court also held that "only a firmly established and regularly followed state practice may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Id.* at ⁻423–24, 111 S.Ct. 850 (internal citations and quotation marks omitted). Accordingly, under *Batson* and *Ford,* state procedural rules govern the timeliness of a *Batson* objection, but those rules must be firmly established and regularly followed in order to bar appellate consideration of the merits of a *Batson* challenge on timeliness grounds. While the ·Court has not expanded on its reasoning from *Ford,* it recently noted that the *Batson* test is meant to "encourage[ ] prompt rulings on objections to peremptory challenges without substantial disruption of the jury selection process." *Johnson,* 125 S.Ct. at 2418 (internal citations and quotation marks omitted).

¶ 20 As the resolution of the case before us turns on whether Valdez's *Batson* challenge—raised after the jury had been sworn and the remainder of the venire dismissed— was timely, we must determine what the established procedures are under Utah law regarding the timeliness of *Batson* challenges. We begin our discussion with a review of the decision of the court of appeals.

---

**12.** Because of the importance of this right and the difficulties that wrongfully excluded jurors face in remedying a violation of this right themselves, the Supreme Court has granted litigants third-party standing to assert the rights of wrongfully struck jurors on their behalf. *See Powers v.*

*Ohio,* 499 U.S. 400, 413–15, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 629, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *Georgia v. McCollum,* 505 U.S. 42, 55–56, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).

¶ 21 In *State v. Valdez*, 2004 UT App 214, 95 P.3d 291, the Utah Court of Appeals held that Valdez's *Batson* challenge was timely on two separate grounds. First, the court of appeals held, based on its prior decision in *State v. Harrison*, 805 P.2d 769, 776 (Utah Ct.App.1991), that Valdez's *Batson* challenge was timely under rule 18(c)(2) of the Utah Rules of Criminal Procedure. *Valdez*, 2004 UT App 214, ¶¶ 9–10, 95 P.3d 291. Second, the court of appeals held that it could not deem Valdez's *Batson* challenge untimely because the rule proposed by the State—that a *Batson* challenge must be raised before the jury is sworn and the venire dismissed—"has not heretofore been a firmly established and regularly followed state [procedure]." *Id.* ¶ 11, 95 P.3d 291 (citing *Ford*, 498 U.S. at 424, 111 S.Ct. 850) (alteration in original) (internal quotation marks omitted). For the reasons discussed below, the court of appeals was incorrect as a matter of law with regard to both of its determinations.

### A. A Batson Challenge Must be Raised Before the Jury is Sworn to be Timely Under Utah Law

¶ 22 In ruling that Valdez's *Batson* challenge was timely under rule 18(c)(2), the court of appeals relied heavily on its decision in *Harrison*. *See State v. Valdez*, 2004 UT App 214, ¶¶ 9–10, 95 P.3d 291 (citing *State v. Harrison*, 805 P.2d 769, 775–76 (Utah Ct.

App.1991)). In *Harrison*, the Utah Court of Appeals considered the timeliness of a *Batson* challenge raised immediately after the jury was sworn but before the venire was dismissed. 805 P.2d at 776. Although the parties did not brief or argue the applicability of rule 18, the court determined sua sponte that rule 18(c)(2) governs the timeliness of a *Batson* objection in Utah.[13] *Id.* The relevant language of that rule, which has not changed since *Harrison* was decided, provides as follows:

> A challenge to an individual juror may be either peremptory or for cause. A challenge to an individual juror may be made only before the jury is sworn to try the action, except the court may, for good cause, permit it to be made after the juror is sworn but before any of the evidence is presented.

Utah R.Crim. P. 18(c)(2). Thus, in *Harrison*, the court of appeals held that a *Batson* challenge is timely under rule 18(c)(2) even when it is raised after the jury is sworn if the trial court finds good cause to permit it. 805 P.2d at 776. The court of appeals also held that a trial court implicitly finds good cause under rule 18(c)(2) "by allowing counsel to proceed with their [*Batson*] arguments." *Id.*

¶ 23 In *Valdez*, the Utah Court of Appeals dramatically expanded the scope of *Harrison* by ruling that "a district court may consider a defendant's *Batson* challenge *beyond* the dismissal of the venire."[14] *Valdez*, 2004 UT

---

**13.** This determination runs counter to the court of appeals' decision three years earlier in *Salt Lake County v. Carlston*, 776 P.2d 653 (Utah Ct.App.1989). In *Carlston*, the defendant had waited to raise her *Batson* challenge until after the trial had concluded. *Id.* at 654. The court of appeals held that a *Batson* challenge must be timely raised or it is waived. *Id.* at 655–56. It then proceeded to discuss timeliness standards for *Batson* challenges at length. *Id.* In its discussion, the court of appeals cited our pre-*Batson* decision in *State v. Bankhead*, 727 P.2d 216 (Utah 1986), for the proposition that a challenge to the jury panel *must* be raised before the jury is sworn in. *Carlston*, 776 P.2d at 655–56 n. 5 (citing *Bankhead*, 727 P.2d at 217).

**14.** In doing so, the court of appeals in *Valdez* implicitly overruled the standards for timely *Batson* challenges it had adopted in *Carlston*. While the court of appeals in *Carlston* noted that a *Batson* challenge must be raised before the jury is sworn, *see Carlston*, 776 P.2d at 655–56 n. 5

(citing *Bankhead*, 727 P.2d at 217), it went on to consider other timeliness concerns. The court stated that "the *Batson* court envisioned a prompt motion to strike the jury panel, 'probably before the venire was dismissed.' " *Id.* at 656 (quoting *United States v. Erwin*, 793 F.2d 656, 667 (5th Cir.1986)). In support of this rule, the court of appeals favorably cited opinions from several other jurisdictions and then stated that the rule was based on "two justifications:" (1) "prevent[ing] defendants from 'sandbagging' the prosecution by waiting until trial has concluded unsatisfactorily before insisting on an explanation for jury strikes[;]" and (2) remedying "prosecutorial misconduct ... prior to commencement of trial simply by seating the wrongfully struck venireperson." *Id.* (quoting *United States v. Forbes*, 816 F.2d 1006, 1011 (5th Cir.1987)). While the *Valdez* Court characterized the rules laid out in *Carlston* as dicta, 2004 UT App 214, ¶ 8, 95 P.3d 291 a close reading of *Carlston* demonstrates that the court of appeals meant to

App 214, ¶ 10, 95 P.3d 291 (emphasis added). Relying on *Harrison*, the court of appeals stated, "So long as it 'allows counsel to proceed with their [*Batson*] arguments,' the district court impliedly finds good cause under rule 18 to consider the constitutional claim." *Id.* (quoting *Harrison*, 805 P.2d at 776) (alterations in original). Because the district court requested that the State respond to Valdez's *Batson* challenge despite the State's timeliness objection, the court of appeals held that the district court had impliedly found good cause to allow the *Batson* challenge under rule 18(c)(2). *Id.*

■ ¶ 24 The court of appeals erred as a matter of law in holding that Valdez's *Batson* challenge was timely under rule 18(c)(2) because rule 18(c)(2) is inapplicable on its face to *Batson* challenges. By its terms, rule 18(c)(2) provides procedural guidelines for a litigant's peremptory or for cause "challenge *to* an individual juror." Utah R.Crim. P. 18(c)(2) (emphasis added). In other words, rule 18(c)(2) provides a time-frame in which a litigant may choose to exercise a peremptory or for cause challenge to remove an individual juror from the venire. *Id.* Under rule 18(c)(2), a litigant who wishes to remove a juror with either a peremptory or for cause challenge may only do so before the jury is sworn unless the trial court finds good cause to allow a challenge afterward. *Id.* In any event, a litigant may not remove a juror with a peremptory or for cause challenge once evidence has been presented. *Id.*

■ ¶ 25 The procedural framework contained in rule 18(c)(2) does not govern *Batson* challenges. A peremptory challenge is a common law procedural device designed to assist litigants in selecting an impartial jury. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). In contrast, a *Batson* challenge is not itself a peremptory challenge, but rather an objection to an opposing litigant's

improper *use of* peremptory challenges. *See Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (noting that the *Batson* test is designed to prevent the use of peremptory challenges to purposefully discriminate "in the empaneling of the petit jury"). A litigant who raises a *Batson* challenge is objecting that the "jury was improperly constituted due to an equal protection violation." *Powers v. Ohio*, 499 U.S. 400, 414, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *see also Batson*, 476 U.S. at 85–86, 106 S.Ct. 1712 ("[T]he defendant [has] the right to be tried by a jury whose members are selected pursuant to non-discriminatory criteria."). In other words, a *Batson* challenge amounts to a statement that the opposing litigant's use of peremptory challenges violates the Fourteenth Amendment, and as a result the empaneled jury is improperly composed. *See, e.g., Powers*, 499 U.S. at 412–13, 111 S.Ct. 1364 (noting that a *Batson* challenge is a challenge to the "composition of the trier of fact"); *Ford v. Georgia*, 498 U.S. 411, 420 n. 5, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) (noting that a *Batson* challenge is an objection to "the selection of an objecting defendant's own jury"). Rule 18(c)(2) has no applicability to an objection made to the composition of the empaneled jury, and thus does not govern *Batson* challenges. Therefore, the Utah Court of Appeals erred in relying on it as the standard for determining whether a *Batson* objection is timely under Utah law.[15]

■ ¶ 26 The court of appeals also erred as a matter of law in its determination that a rule that "would prohibit *Batson* challenges after the venire has been dismissed and the jury has been sworn, [is] not ... a 'firmly established and regularly followed state [procedure].'" *Valdez*, 2004 UT App 214, ¶ 11, 95 P.3d 291 (quoting *Ford*, 498 U.S. at 423, 111 S.Ct. 850) (alteration in original). According to the court of appeals, "At best, this rule could be gleaned by analogy and impli-

---

adopt these rules. *See Carlston*, 776 P.2d at 656 ("We believe they *apply* with equal force in the civil litigation context." (emphasis added)).

**15.** Thus, a trial court cannot impliedly find good faith to allow a *Batson* challenge after the jury has been sworn under rule 18(c)(2) because rule 18(c)(2) does not apply to *Batson* challenges.

We note that an equally plausible explanation for the trial court's request that the State explain its use of peremptory challenges notwithstanding the timeliness of Valdez's *Batson* challenge is that the trial court simply wanted to ensure that an adequate contemporaneous record was made.

cation from *Harrison* and rule 18[ (c)(2)]." *Id.* As discussed above, rule 18(c)(2) is inapplicable in any event. Furthermore, a survey of Utah law indicates that it is a well established principle that *Batson* challenges must be raised both before the jury is sworn and before the remainder of the venire is dismissed in order to be deemed timely.

¶ 27 In *State v. Bankhead*, 727 P.2d 216 (Utah 1986), a case decided by this court prior to *Batson*, we considered the timeliness of a challenge to the composition of the jury. The defendant, who was African American, argued that her constitutional rights had been violated because the jury selected to try her case did not include any members of her race. *Id.* at 217. She moved to quash the jury panel, but not until all of the evidence had already been admitted. *Id.* Citing section 78–46–16(1) of the Utah Code, we held that the defendant's objection was waived because "any challenge to the jury must be lodged *before* the jury is sworn." *Bankhead*, 727 P.2d at 217 (emphasis added). We also cited the United States Supreme Court's decision in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), noting that under *Taylor* a litigant does not have a Sixth Amendment right to a jury that is a perfect cross section of the community but is entitled to a jury selected from a venire that represents a cross section of the community. *Bankhead*, 727 P.2d at 217 (citing *Taylor*, 419 U.S. at 538, 95 S.Ct. 692).

¶ 28 *Taylor* is generally representative of the Supreme Court's pre-*Batson* jurisprudence regarding the composition of juries, which was "concerned largely with discrimination during selection of the venire." *Batson*, 476 U.S. at 88, 106 S.Ct. 1712. This trend began with *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1880) where the Court held that it is a violation of the Equal Protection Clause to exclude members of the defendant's race from the jury venire solely on account of race. *Id.* at 307–09. Over

time, *Strauder* came to stand for the principle that under the Equal Protection Clause the jury venire must be selected pursuant to nondiscriminatory criteria, *see Martin v. Texas*, 200 U.S. 316, 319–21, 26 S.Ct. 338, 50 L.Ed. 497 (1906), and must be representatively drawn from the community, *Duncan v. Louisiana*, 391 U.S. 145, 156, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). However, the Court consistently held that the Equal Protection Clause does not guarantee a litigant a jury of a certain composition. *See Akins v. Texas*, 325 U.S. 398, 403, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945). In *Taylor*, the Court applied these same rules under the Sixth Amendment, holding that although the Sixth Amendment does not guarantee that a petit jury will "mirror the community," it does guarantee that the petit jury will be selected from a venire that is representative of the community. 419 U.S. at 538, 95 S.Ct. 692.

¶ 29 In *Batson*, the Court extended the principles established in its previous cases regarding the composition of the venire to the composition of the petit jury.[16] 476 U.S. at 88, 106 S.Ct. 1712. The Court noted that the Fourteenth Amendment principles that prevented purposeful discrimination in the selection of the jury venire were indistinguishable from the principles animating concern over purposeful discrimination in the selection of the petit jury. *See id.* ("[T]he State may not draw up its jury lists pursuant to neutral procedures but then resort to discrimination at 'other stages in the selection process.' " (citations omitted)). Thus, the Supreme Court's jurisprudence regarding the selection of the venire and its jurisprudence regarding the selection of the petit jury are complementary.

¶ 30 The relationship in Utah law between challenges to the venire and challenges to the petit jury is also complementary, particularly with regard to procedural rules. Beginning with *Bankhead*, this court has consistently held that challenges to the jury, both to the

---

**16.** In fact, the Court relied on its cases dealing with the composition of the jury venire to overrule *Swain*, noting that "since the decision in *Swain*, this Court has recognized that a defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire by relying solely on the facts concerning

its selection *in his case.*" *Batson*, 476 U.S. at 95, 106 S.Ct. 1712. Moreover, the three-step burden-shifting evidentiary framework established in *Batson* is the exact same evidentiary inquiry the Court had devised in its pre-*Batson* cases dealing with the composition of the venire. *Id.* at 93–96, 106 S.Ct. 1712.

composition of the venire and the composition of the petit jury, must be raised before the jury is sworn or they are untimely. In *Bankhead,* we relied on the procedural guidelines contained in the Jury and Witness Act, Utah Code Ann. §§ 78–46–1 to –41 (1953), in holding that the defendant's objection to the composition of her petit jury was untimely. *Bankhead,* 727 P.2d at 217. Two portions of that Act are relevant to our discussion. First, section 78–46–3 states, "A citizen shall not be excluded or exempt from jury service on account of race, color, religion, sex, national origin, age, occupation, disability, or economic status." Utah Code Ann. § 78–46–3 (2002). Second, section 78–46–16 provides that a party seeking relief based on a "failure to comply with this act in selecting a ... trial jury" must move for relief *"before* the trial jury is sworn." *Id.* § 78–46–16(1) (2002) (emphasis added). That section also states that this procedure is "the *exclusive* means by which a [litigant] ... may challenge a jury on the ground that the jury was not selected in conformity with this act." *Id.* § 78–46–16(3) (emphasis added).

¶ 31 We note that the Jury and Witness Act purports to impose procedural rules on Utah's courts and therefore may be in tension with article VIII, section 4 of the Utah Constitution. As we recently noted in *Burns v. Boyden,* 2006 UT 14, 133 P.3d 370, this provision of the Utah Constitution vests the Utah Supreme Court with the authority to adopt rules of procedure to be used in Utah's courts, *id.* ¶ 15 n. 3, 133 P.3d 370 (quoting

Utah Const. art. VIII, § 4), and the legislature with power to alter the procedural rules adopted by this court "upon a vote of two-thirds of all members of both houses of the Legislature," Utah Const. art. VIII, § 4. However, the status of the procedural rules contained within the Jury and Witness Act is not before us. In addition, this court has previously stated on one occasion that the Act does not govern constitutional challenges to the jury selection process.[17] *State v. Tillman,* 750 P.2d 546, 574 n. 115 (1987). Accordingly, the procedural rules ·contained within the Act could not conflict with any procedural rules relevant to our determination of this case, nor do they. A careful review of our case law demonstrates that the timeliness standards applied by this court to constitutional challenges to the jury selection process, including *Batson* challenges, continued to mirror those contained in section 78–46–16 following our decision in *Tillman.*[18]

¶ 32 In *State v. Cantu,* 750 P.2d 591 (Utah 1988), the first case decided by this court under the *Batson* framework, the timeliness of the defendant's *Batson* challenge was not at issue because the defendant had moved to quash the entire jury panel on fair cross-section grounds before the prosecution's peremptory challenges were even exercised, and he apparently renewed the objection immediately after the prosecution exercised a peremptory strike to remove a minority jury member. *Id.* at 592–93, 596.

---

**17.** In *Harrison,* the Utah Court of Appeals made much of this court's decision in *State v. Tillman,* 750 P.2d 546 (1987). Relying on *Tillman,* the court of appeals in *Harrison* rejected the argument that the defendant's *Batson* challenge—not raised until after the jury was sworn—was untimely under the prior version of the Jury and Witness Act. *Harrison,* 805 P.2d at 776 (citing the Jury Selection and Service Act, Utah Code Ann. § 78–46–16(1) (Supp.1990)). The court of appeals noted that the defendant's *Batson* challenge was a constitutional objection, not an objection made under the Act. *Id.* The court thus concluded that the timeliness standards contained within section 78–46–16(1) did not apply to the defendant's *Batson* challenge, and proceeded to apply the timeliness standards contained within rule 18(c)(2) of the Utah Rules of Criminal Procedure. *Id.* (citing *Tillman,* 750 P.2d at 574 n. 115).

However, even following *Tillman,* this court has consistently applied timeliness standards to constitutional challenges to the jury selection process that mirror those contained within section 78–46–16. *See infra* ¶¶ 32–35.

**18.** Indeed, it would make for strange procedure to apply different timeliness standards for challenges raised pursuant to the Jury and Witness Act—which protects a broader range of classifications from discrimination in the jury selection process, *see* Utah Code Ann. § 78–46–3,—from those applied to constitutional challenges. As with a *Batson* challenge, a violation of the Jury and Witness Act can only be fully remedied by an objection brought both before the jury is sworn and before the venire is dismissed. *See infra* ¶¶ 42–45.

¶ 33 However, in *Redd v. Negley*, 785 P.2d 1098 (Utah 1989), the timeliness of a challenge to the composition of the jury was squarely before the court. There, the plaintiff apparently raised the issue of the composition of the selected jury off the record before the jury was sworn. *Id.* at 1099. After the jury was sworn and dismissed for lunch, the plaintiff made a vague objection on the record regarding the number of minority jurors on the petit jury. *Id.* at 1099–1100. The trial court denied the plaintiff's objection under section 78–46–16, ruling that the objection had not been raised before the jury was sworn. *Id.* at 1100. On appeal, this court disagreed as to the proper way to view the plaintiff's vague objection. The majority believed the plaintiff's objection amounted only to an objection that there was not a proportionate number of minority jurors on the petit jury. *Id.* at 1100–01. In contrast, the dissent stated that the plaintiff's objection could also be characterized as an objection to the composition of the jury venire or to the defense's use of peremptory challenges to remove the only two minority members from the selected panel—in other words, a *Batson* challenge. *Id.* at 1103–04 (Durham, J., dissenting). However, the court drew no distinction between these characterizations in its treatment of the plaintiff's objection. Rather, the court noted that the record indicated "that plaintiff objected to the jury selection prior to the swearing of the jury and that the jury was passed for cause only with the reservation that plaintiff's challenge could be later made." [19] *Id.* at 1100. The court held that because the challenge was raised before the jury was sworn in, the trial court had erred in denying the challenge on timeliness grounds, citing both section 78–46–16 and *Bankhead. Id.*

¶ 34 In *State v. Span*, 819 P.2d 329 (Utah 1991), this court again addressed the timeliness of a *Batson* challenge. There, the defendant alleged that the prosecutor had used a racially motivated peremptory challenge to remove the only minority juror from the jury venire. *Id.* at 336. The defendant raised his *Batson* challenge by moving to quash the jury panel before the jury was sworn. *Id.* The trial court allowed the prosecutor to explain the reasons for the peremptory challenge, then denied the motion on timeliness grounds. *Id.* at 336–37. On appeal, the State conceded that the trial court had erred in denying the *Batson* challenge on timeliness grounds. *Id.* at 337. This court agreed, noting that the defendant's *Batson* challenge had been raised immediately after the peremptory challenges were completed and before the jury was sworn. *Id.* The court also cited section 78–46–16 and *Bankhead* in support of the position that the motion had been timely made. *Id.*

¶ 35 In all of this court's decisions since *Span*, we have never deviated from the rule that a challenge to the composition of the jury must be raised before the jury is sworn in. *See State v. Young*, 853 P.2d 327, 338 (1993) (defendant objected to composition of the jury on fair cross section grounds before the jury was sworn in); *State v. Alvarez*, 872 P.2d 450, 456 (Utah 1994) (defendant raised *Batson* challenge "[p]rior to the swearing of the jury"); *State v. Higginbotham*, 917 P.2d 545, 546 (Utah 1996) (*Batson* challenge raised as soon as prosecutor used peremptory challenge to remove only minority juror from panel of prospective jurors); *State v. Colwell*, 2000 UT 8, ¶ 14, 994 P.2d 177 (*Batson* challenge raised as soon as prosecutor used peremptory challenge to remove only African American juror from panel of prospective jurors). Even the Utah Court of Appeals' decision in *Salt Lake County v. Carlston*, 776 P.2d 653 (Utah Ct.App.1989), which properly cited *Bankhead*, followed this rule, *see id.* at 656 n. 5. The sole aberration prior to the court of appeals' decision in this case is *Harrison*, in which the court of appeals erroneously applied rule 18(c)(2) of the Utah Rules of Criminal Procedure to *Batson*

---

**19.** We note that this procedure, whereby an objection was made prior to the swearing of the jury but not addressed by the court until after the jury was sworn in and dismissed, will generally not meet the standard we set forth today. A *Batson* challenge must be raised both before the jury is sworn and before the venire is dismissed in order to allow the trial court to adequately remedy a *Batson* violation if one has occurred. *See infra* ¶¶ 42–45. Obviously, if the grounds for the *Batson* challenge are not articulated until after the jury has been sworn and the remainder of the venire is dismissed, the trial court cannot cure a *Batson* violation. *Id.*

challenges. *Harrison,* 805 P.2d at 775–76. However, our decision in *Span,* which followed *Harrison,* clearly indicates that this court continued to rely on the standard established in *Bankhead. Span,* 819 P.2d at 337. It has therefore long been the law in Utah that constitutional challenges to the composition of the jury—both the venire and to the selected jury—must be raised before the jury is sworn.

¶ 36 Our decision is bolstered by the fact that the only rule of criminal procedure that applies to the composition of juries requires that a challenge be brought before the jury is sworn. In contrast with rule 18(c)(2), which does not apply to challenges to the jury as a panel, rule 18(c)(1) governs challenges to "[t]he panel ... of jurors called to serve at a particular court or for the trial of a particular action." Utah R.Crim. P. 18(c)(1). Under this rule, a party may challenge the panel based "on a material departure from the procedure prescribed with respect to the selection, drawing, summoning and return of the panel." Utah. R.Crim. P. 18(c)(1)(i). In other words, this rule governs challenges to the composition of the entire venire. Under this rule, all challenges to the jury panel must "be taken *before* the jury is sworn." Utah R.Crim. P. 18(c)(1)(ii) (emphasis added). As discussed above, *supra* ¶¶ 28–29, *Batson* challenges are based on Fourteenth Amendment concerns identical to those implicated by discrimination in the selection of the entire venire. *Batson,* 476 U.S. at 88, 106 S.Ct. 1712. Moreover, Utah procedural law does not distinguish between challenges to the venire and challenges to the petit jury. Therefore, while rule 18(c)(1) does not explicitly apply to *Batson* challenges, which are challenges to the composition of the selected jury, it contains the same timeliness rule that applies to *Batson* challenges. We also note that the annotations for rule 18 cross-reference the Jury and Witness Act, which we have relied on for our *Batson* timeliness

standards. Utah R.Crim. P. 18 cross references.

¶ 37 We agree with the court of appeals that Utah's procedural standards with respect to *Batson* challenges "would best be addressed by an amendment to the Utah Rules of Criminal Procedure." *Valdez,* 2004 UT App 214, ¶ 11 n. 1, 95 P.3d 291. The Rules of Criminal Procedure should clearly reflect our case law with respect to this important procedural requirement, and we will request the assistance of our Advisory Committee in drafting such a rule. It is nonetheless clear under Utah law that a constitutional challenge to the jury selection process—whether it be to the entire venire or to the jury selected to try the case—must be brought before the jury is sworn. This rule has long been a "firmly established and regularly followed state practice" in Utah, as required by *Ford.* 498 U.S. at 423, 111 S.Ct. 850 (citations and internal quotation marks omitted). Therefore, we hold that Valdez's *Batson* challenge, which was not brought until after the jury was sworn, was untimely.

¶ 38 While our holding is dispositive of this case, it does not end our analysis. We hold that a *Batson* challenge must be raised not only before the jury is sworn, but also before the remainder of the venire is dismissed in order to be deemed timely under Utah law. While we believe that the second part of this rule is established state law, even if it is not "firmly established and regularly followed," *id.,* we hold that it is a procedural requisite to a *Batson* challenge from this point forward.[20] We first address the origins of this rule in Utah law, and then the justifications for it.

### B. A Batson Challenge Must be Raised Before the Venire is Dismissed to be Timely Under Utah Law

¶ 39 While this court has not explicitly considered the implications of a *Batson* challenge raised after the remainder of the venire has been dismissed, the Utah Court of

---

**20.** Even if the rule that a *Batson* challenge must be brought before the remainder of the venire is dismissed is not "a firmly established and regularly followed state practice," we note that we are not "interpos[ing] ... [it] to prevent subsequent review" in this case. *Ford v. Georgia,* 498

U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) (citations and internal quotation marks omitted). The rule that a *Batson* challenge must be brought before the jury is sworn is firmly established in Utah, and thus it is that rule which bars subsequent review in this case.

Appeals has. In *Salt Lake County v. Carlston*, the court of appeals stated that a *Batson* challenge, like other objections, must be "*timely* presented to the trial court in a manner sufficient to obtain a ruling thereon." 776 P.2d 653, 655 (Utah Ct.App.1989). In addressing timeliness standards, the court of appeals stated that a *Batson* challenge must be raised before the jury is sworn but also seemed to adopt a rule that a *Batson* challenge must be raised before the venire is dismissed. *Id.* at 655–56. The court stated that "the *Batson* court envisioned a prompt motion·to strike the jury panel, 'probably before the venire was dismissed.' " *Id.* at 656 (quoting *United States·v. Erwin*, 793 F.2d 656, 667 (5th Cir.1986)). The court of appeals noted that this rule was based on "two justifications:" (1) "prevent[ing] defendants from 'sandbagging' the prosecution by waiting until trial has concluded unsatisfactorily before insisting on an explanation for jury strikes[;]" and (2) remedying "prosecutorial misconduct prior to commencement of trial simply by seating the wrongfully struck venireperson." *Id.* (quoting *United States v. Forbes*, 816 F.2d 1006, 1011 (5th Cir.1987)).

¶ 40 In *State v. Harrison*, the court of appeals considered a *Batson* challenge raised after the jury was sworn but before the venire was dismissed. 805 P.2d 769, 773 (Utah Ct.App.1991). The court cited *Carlston* to support its position that the defendant had raised his *Batson* challenge in a manner sufficient to obtain a ruling from the trial court. *Id.* at 776.· While the court of appeals mistakenly applied the timeliness standards of rule 18(c)(2) of the Utah Rules of Criminal Procedure to the *Batson* challenge, it never contradicted its position in *Carlston* that a *Batson* challenge must be raised before the venire is dismissed. *See id.* Obviously, if a *Batson* violation is to be remedied by seating the wrongfully struck juror, as implied by *Carlston*, 776 P.2d at 656, a *Batson* challenge must be raised before the venire is dismissed if the trial court is to properly rule on it, *id.* at 655. Thus, the only logical reading of *Harrison* is that the court of appeals left intact the *Carlston* rule that a *Batson* challenge must be raised before the venire is dismissed.

¶ 41 Until the court of appeals' decision in *State v. Valdez*, 2004 UT App 214, ¶ 10, 95 P.3d 291, no Utah court had ever allowed a *Batson* challenge to proceed as timely after the venire had been dismissed. We hold that the court of appeals in *Valdez* erred by reading *Harrison* to mean that a *Batson* challenge can be raised after the dismissal of the venire. Rather, the rule established in *Carlston* that a *Batson* challenge must be raised before the venire is dismissed existed undisturbed until the court of appeals implicitly overruled it in *Valdez*. *Id.* Even if this were not the case, we would be compelled to adopt and apply this rule prospectively, for this rule logically flows from the rationale underlying a *Batson* challenge.

¶ 42 In *Carlston*, the Utah Court of Appeals correctly noted that "the process mandated by *Batson* . . . rests on the premise that the trial court will hear the objection and make a factual finding of whether the [proponent] has used peremptory challenges in a discriminatory manner." *Carlston*, 776 P.2d at 656. The court noted that an untimely *Batson* objection impedes the ability of the trial judge to make a proper factual finding on the evidence presented and also deprives the proponent "of the opportunity to present evidence of any constitutionally permissible reasons for challenges to the venire members." *Id.* Indeed, the three-step process of *Batson* would be severely impeded were a *Batson* challenge to be allowed after the jury selection process is complete. The burden-shifting framework of *Batson* is best implemented if it is litigated while the peremptory strikes are fresh in the minds of both the court and the litigants. *See McCrory v. Henderson*, 82 F.3d 1243, 1247–48 (2d Cir. 1996) (citing numerous decisions holding that the "subjective" nature of the peremptory challenge "mandates that any objection to its use be raised and ruled upon promptly").

¶ 43 First, the party raising the *Batson* challenge will be better able to make out a prima facie case if he can discuss the proponent's use of peremptory strikes in relation to the characteristics of the individual jurors stricken as well any relevant voir dire. In other words, the opponent will be more equipped to demonstrate that the *Batson*

challenge has merit if he raises it sooner rather than later.[21] *See State v. Alvarez*, 872 P.2d 450, 455 (Utah 1994) (noting that the purpose of the prima facie requirement is to "separate meritless claims of discrimination from those that may have merit" (citation and internal quotation marks omitted)). Second, the proponent of the peremptory strikes is more capable of presenting evidence to rebut a *Batson* challenge if the *Batson* challenge is promptly raised because both voir dire and the stricken jurors will be fresh in his mind. Finally, the trial judge must be able to weigh the evidence presented to determine whether the *Batson* standard has been met. This necessarily requires that the trial judge weigh the arguments and credibility of both litigants in light of the individual jurors' behavior, mannerisms, and responses to voir dire. This duty is likewise accomplished more effectively if a *Batson* challenge is promptly raised. "The *Batson* framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process." *Johnson v. California*, 545 U.S. 162, 125 S.Ct. 2410, 2418, 162 L.Ed.2d 129 (2005). In order to ensure that this framework produces actual answers, it is necessary that *Batson* challenges are promptly raised and that courts timely rule upon them. *Id.* The rule we set forth, which requires that a *Batson* challenge be raised both before the jury is sworn and before the venire is dismissed, efficiently allows the trial court to determine the issues the *Batson* test is designed to resolve.

¶ 44 In addition, a *Batson* challenge must be raised in such a manner that the trial court is able to fashion a remedy in the event a *Batson* violation has occurred. As the *Johnson* Court noted, the *Batson* test "encourages prompt rulings on objections to peremptory challenges without substantial disruption of the jury selection process." *Id.* (citations and internal quotation marks omitted). A *Batson* violation can only be remedied without substantially disrupting the jury selection process if it is brought before the venire is dismissed. If a *Batson* violation is found before the venire is dismissed, the violation can be remedied simply by reinstating the stricken juror. Once the venire has been dismissed, however, a sustained *Batson* challenge will require the trial judge to, at minimum, call additional jurors, and may require the judge to call an entirely new venire from which to select a new jury. Also, if a *Batson* violation is found after the jury has been sworn *and* the venire excused, the only available remedy is a mistrial.[22] *See McCrory*, 82 F.3d at 1247. We see no legitimate reason to sanction such an inefficient use of judicial time and resources, or to allow such a burden to be imposed on the parties. Moreover, to allow a *Batson* challenge to proceed after the venire has been dismissed is only to sanction abuse. If such a result were allowed, a party would be able to delay raising a *Batson* challenge until it determined whether it approved of the selected jury.

---

**21.** This is not to say that a party who raises a *Batson* challenge before peremptory challenges are even used has raised a timely *Batson* challenge. Obviously, a party cannot properly raise a *Batson* challenge until that party is able to make out a prima facie case of purposeful discrimination, which in most cases will not be possible until peremptory challenges are exercised.

**22.** In *McCrory v. Henderson*, 82 F.3d 1243 (2d Cir.1996), the court observed:

If ... a *Batson* objection may be raised after the jury has been sworn and trial has begun, there can be no remedy short of aborting the trial. This would permit the defendant to manipulate the system to the extreme prejudice of the prosecution and give the defendant a strong inducement to delay raising the objection until trial is underway. As the trial judge is unlikely for reasons of judicial economy to abort the trial, the defendant may have the opportunity to test his fortunes with the first jury, preserving the opportunity for a mistrial and a second round in the event of a conviction. *See United States v. Dobynes*, 905 F.2d 1192, 1196–97 (8th Cir. [1990]) (holding that *Batson* challenge raised for the first time after trial was untimely in part because only remedy after trial is vacating the conviction), *cert. denied*, 498 U.S. 877, 111 S.Ct. 206, 112 L.Ed.2d 167 (1990); *United States v. Forbes*, 816 F.2d 1006, 1011 (5th Cir.1987)("The 'timely objection' rule is designed to prevent defendants from 'sandbagging' the prosecution by waiting until trial has concluded unsatisfactorily before insisting on an explanation for jury strikes that by then the prosecutor may largely have forgotten.").

*Id.* at 1247.

Such sandbagging is antithetical to notions of judicial economy and procedural fairness.

¶ 45 Finally, the rights that the *Batson* challenge is designed to protect cannot be fully vindicated if a *Batson* challenge is allowed after the dismissal of the venire. A *Batson* challenge is designed to remedy "harm to the litigants, the community, and the individual jurors who are wrongfully excluded" that occurs when discriminatory jury selection criteria are tolerated. *J.E.B. v. Alabama*, 511 U.S. 127, 140, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). While the Court has held that individual jurors who are wrongfully excluded may bring suit, it has also noted that "[a]s a practical matter ... these challenges are rare." *Powers v. Ohio*, 499 U.S. 400, 414, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). This is because "[p]otential jurors are not parties ... and have no opportunity to be heard at the time of their exclusion." *Id.* Moreover, a wrongfully stricken juror cannot "easily obtain declaratory or injunctive relief when discrimination occurs." *Id.* Therefore, in the vast majority of cases in which an individual juror is wrongfully excluded, the discrimination against the juror goes unredressed if he remains excluded from jury service. The only logical way to ensure the possibility of redress is to require that a *Batson* objection be raised before the venire is dismissed. Under this rule, if a *Batson* challenge is found, the improperly excluded juror can then be reinstated.

¶ 46 In summary, we hold that a *Batson* challenge must be raised both before the jury is sworn and before the venire is dismissed in order to be timely under Utah law. We note that this rule is similar to the rule that was sanctioned by the Supreme Court in *Ford v. Georgia.* *See* 498 U.S. 411, 422, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) ("The require-

ment that any *Batson* claim be raised not only before trial, but in the period between the selection of the jurors and the administration of their oaths, is a sensible rule."). We also note that the fact that the rule we adopt is widely followed by other jurisdictions—both federal and state—that have considered this issue. *See, e.g., Morning v. Zapata Protein (USA), Inc.*, 128 F.3d 213, 216 (4th Cir.1997) (noting that most of the federal circuits have taken the cue from *Ford* and "requir[ed] *Batson* challenges to be raised, at the latest, before the venire is excused"); *McCrory*, 82 F.3d at 1247 ("The Court's discussion in *Batson*, however, makes clear that it envisioned an objection raised *during* the jury selection process." (emphasis added)); *State v. Ford*, 2001 MT 230, ¶ 30, 306 Mont. 517, 39 P.3d 108 (holding that a *Batson* challenge is not timely if the jury has been sworn and the venire dismissed, and observing that "[s]everal jurisdictions have closely analyzed *Batson's* language and concluded that the U.S. Supreme Court envisioned that a *Batson* challenge must be made before the jury is sworn," while citing numerous state decisions barring *Batson* objections after the jury is sworn and the venire is dismissed). We are aware of no case in any jurisdiction, aside from the court of appeals' decision in this case below, in which a court found a *Batson* challenge to be timely after both the jury was sworn and the remainder of the venire was dismissed—in other words, after the jury selection process was wholly complete.[23] Accordingly, we hold that Valdez's *Batson* challenge—raised after the jury was sworn and the venire dismissed—was untimely under Utah law.

## CONCLUSION

¶ 47 We hold that a *Batson* challenge must be raised before the jury is sworn and before

---

**23.** Valdez cites to only one other case in which a court allowed a *Batson* challenge to proceed after the jury had been sworn. *See Lewis v. Commonwealth*, 25 Va.App. 745, 492 S.E.2d 492, 493 (1997). While it is true that in *Lewis* the Virginia Court of Appeals interpreted its state's statutes to allow a *Batson* challenge to proceed after the jury was sworn "with leave of court", the court declined to extend its holding to a situation in which the jury had been sworn *and* the remainder of the venire excused. *Id.* at 494. The court reasoned that:

A trial court's exercise of discretion may be improperly cabined, however, if the challenge is made after the jury is sworn and the remaining venirepersons are discharged. At that point, the court cannot reseat a juror improperly stricken, and discharging the venire and beginning the process of jury selection anew may be compelled under the circumstances. Such a result will generally serve neither the public policy *Batson* seeks to advance, nor the fair administration of justice.
*Id.*

the remainder of the venire has been excused in order to be timely under Utah law. Because we hold that Valdez's *Batson* challenge was not timely, we reverse the court of appeals and remand this case to that court for consideration of the other issues raised by Valdez below.

¶ 48 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.